Robert Kenneth Dixon (SBN 262252)
rdixon@sandersroberts.com
SANDERS ROBERTS LLP
101 West Broadway, Suite 1105
San Diego, CA 92101
(619) 398-4800 ext. 1

Steven A. Zalesin (*pro hac vice* forthcoming)
sazalesin@pbwt.com
Jonah M. Knobler (*pro hac vice* forthcoming)
jknobler@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
(212) 336-2110

*Attorneys for Defendant The Hershey Company*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVA GRAUSZ, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>vs.<br><br>THE HERSHEY COMPANY,<br><br>Defendant. | Case No. 3:23-cv-0028-AJB-NLS<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     May 4, 2023<br>Time:    2:00pm<br>Place:   Courtroom 4A, 4th Floor<br>Judge:  Hon. Anthony J. Battaglia<br><br>Complaint Filed:   January 6, 2023 |

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that on May 4, 2023, 2023 at 2:00pm, or as soon thereafter as the matter may be heard, in Courtroom 4A before the Honorable Anthony J. Battaglia of the Southern District of California, Defendant The Hershey Company will and hereby does move the Court to dismiss Plaintiff Eva Grausz's Complaint for lack of standing and/or failure to state a claim.  Plaintiff alleges violations of the Unfair Competition Law, Cal. Bus. Prof. Code § 17200, *et seq.*, the False Advertising Law, Cal. Bus. Prof. Code § 17500, *et seq.*, the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and brings common-law claims for breach of implied warranty and unjust enrichment.

This motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds set forth in the accompanying memorandum of points and authorities.

Dated:        March 10, 2023

Respectfully submitted,

*/s/ Robert K Dixon*
Robert Kenneth Dixon (SBN 262252)
SANDERS ROBERTS LLP

Steven A. Zalesin (*pro hac vice* forthcoming)
Jonah M. Knobler (*pro hac vice* forthcoming)
PATTERSON BELKNAP WEBB &
TYLER LLP

*Attorneys for Defendant The Hershey Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................1

STATEMENT OF FACTS ......................................................................2

ARGUMENT .......................................................................................9

I.    PLAINTIFF LACKS ARTICLE III STANDING ...............................9

    A.    Plaintiff Makes No Plausible Allegation of Economic
        Injury ...........................................................................9

    B.    Plaintiff Alleges No "Real and Immediate" Future Injury .......15

II.   THE COMPLAINT SHOULD BE DISMISSED FOR
    FAILURE TO COMPLY WITH THE PREREQUISITES OF
    PROPOSITION 65 .....................................................................15

III.  THE CONSENT JUDGMENT BARS PLAINTIFF'S CLAIMS.......16

IV.   THE COMPLAINT SHOULD BE DISMISSED UNDER THE
    PRIMARY JURISDICTION DOCTRINE .........................................20

V.    PLAINTIFF FAILS TO STATE ANY VALID CAUSE OF
    ACTION ..................................................................................21

    A.    Plaintiff's UCL, FAL and CLRA Claims Fail .........................21

    B.    Plaintiff Fails to State a Claim for Breach of Implied
        Warranty ......................................................................25

    C.    Plaintiff Fails to State a Claim for Unjust Enrichment .............25

CONCLUSION ....................................................................................25

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aellis O. v. Connor*,
    2022 WL 2229421 (S.D. Cal. June 21, 2022) ...................................................25

*Axon v. Florida's Natural Growers, Inc.*,
    813 F. App'x 701 (2d Cir. 2020) ............................................................24

*Bao Yi Yang v. Shanghai Gourmet, LLC*,
    471 F. App'x 784 (9th Cir. 2012) ...........................................................19

*Bates v. United Parcel Serv., Inc.*,
    511 F.3d 974 (9th Cir. 2007) ...............................................................15

*Baum v. J-B Weld Co., LLC*,
    2020 WL 4923624 (N.D. Cal. Aug. 21, 2020) ...................................................18

*In re Beech-Nut Baby Food Litig.*,
    2023 WL 350818 (N.D.N.Y. Jan. 19, 2023) ...............................................20, 21

*Cattie v. Wal-Mart Stores, Inc.*,
    504 F. Supp. 2d 939 (S.D. Cal. 2007).......................................................21

*Caudel v. Amazon.com, Inc.*,
    2021 WL 4819602 (E.D. Cal. Oct. 15, 2021).................................................10

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ....................................................................18

*Charles v. Sutter Home Winery, Inc.*,
    232 Cal. Rptr. 3d 513 (Cal. Ct. App. 2018), *review denied and
    ordered depublished*, (Cal. Aug. 8, 2018) ...............................................19

*Citizens for Open Access v. Seadrift Ass'n*,
    60 Cal. App. 4th 1053 (1998) .............................................................17

*Clevenger v. Welch Foods Inc.*,
    2022 WL 18228288 (C.D. Cal. Dec. 14, 2022)...............................................22

ii

*Consumer Advocacy Grp., Inc. v. ExxonMobil Corp.*,
    168 Cal. App. 4th 675 (2008) ...................................................................17

*Consumer Def. Grp. v. Rental Hous. Indus. Members*,
    137 Cal. App. 4th 1185 (Cal. Ct. App. 2006)........................................18

*Davel Commc'ns, Inc. v. Qwest Corp.*,
    460 F.3d 1075 (9th Cir. 2006) ................................................................20

*Dozier v. Walmart Inc.*,
    2021 WL 1534973 (C.D. Cal. Mar. 5, 2021).........................................14

*Gates v. Superior Court*,
    178 Cal. App. 3d 301 (1986) ..................................................................17

*In re Gen. Mills Glyphosate Litig.*,
    2017 WL 2983877 (D. Minn. July 12, 2017) .......................................24

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*,
    2022 WL 10197651 (E.D. Va. Oct. 17, 2022)......................................14, 20, 21

*Gutierrez v. John & Johnson Consumer, Inc.*,
    2020 WL 6106813 (S.D. Cal. Apr. 27, 2020) ......................................16

*Guzman v. Polaris Indus. Inc.*,
    49 F.4th 1308 (9th Cir. 2022) ................................................................22

*Harris v. R.J. Reynolds Vapor Co.*,
    2016 WL 6246415 (N.D. Cal. Sept. 30, 2016)....................................16

*Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*,
    2020 WL 5910071 (N.D. Cal. Oct. 6, 2020) ........................................24

*Herrington v. Johnson & Johnson Consumer Cos.*,
    2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)......................................13

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018) .................................................................23, 25

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales*
*Practices & Liab. Litig.*,
    903 F.3d 278 (3d Cir. 2018) ...................................................................10, 15

iii

*Kimca v. Sprout Foods, Inc.*,
   2022 WL 1213488 (D.N.J. Apr. 25, 2022) .................................................13, 14

*Kimca v. Sprout Foods, Inc.*,
   2022 WL 3586095 (N.J. Super. Law Div. Aug. 5, 2022) ............................20, 21

*In re Kind LLC*,
   209 F. Supp. 3d 689 (S.D.N.Y. 2016) ...............................................................21

*Koronthaly v. L'Oreal USA, Inc.*,
   374 F. App'x 257 (3d Cir. 2010) ................................................................12, 14

*Krik v. Exxon Mobil Corp.*,
   870 F.3d 669 (7th Cir. 2017) ............................................................................14

*McGee v. S-L Snacks Nat'l*,
   982 F.3d 700 (9th Cir. 2020) .....................................................................10, 12

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ...............................................................................23

*Mulford v. Altria Grp., Inc.*,
   506 F. Supp. 2d 733 (D.N.M. 2007)..................................................................18

*Parks v. Ainsworth Pet Nutrition, LLC*,
   377 F. Supp. 3d 241 (S.D.N.Y. 2019) ...............................................................24

*Pels v. Keurig Dr. Pepper, Inc.*,
   2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ....................................................11

*Pershing Pac. W., LLC v. Ferretti Grp., USA, Inc.*,
   2013 WL 275676 (S.D. Cal. Jan. 24, 2013) ......................................................25

*In re Plum Baby Food Litig.*,
   2022 WL 16552786 (D.N.J. Oct. 31, 2022) .......................................................23

*Price v. Philip Morris, Inc.*,
   848 N.E.2d 1 (Ill. 2005)......................................................................................18

*Reese v. Odwalla, Inc.*,
   30 F. Supp. 3d 935 (N.D. Cal. 2014)..................................................................20

*Reiter v. Cooper*,
   507 U.S. 258 (1993)................................................................................20

*Rivera v. Jeld-Wen, Inc.*,
   2022 WL 3702934 (S.D. Cal. Feb. 4, 2022)...........................................22

*Rooney v. Procter & Gamble Co.*,
   2022 WL 17092124 (E.D. La. Nov. 21, 2022)........................................11

*Russo v. Microsoft Corp.*,
   2021 WL 2688850 (N.D. Cal. June 30, 2021)........................................12

*Shay v. Apple Inc.*,
   2021 WL 1733385 (S.D. Cal. May 3, 2021) ...........................................22

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ..................................................................22

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)..................................................................................9

*State Farm Mut. Auto. Ins. Co. v. Davis*,
   937 F.2d 1415 (9th Cir. 1991) ................................................................19

*Stearns v. Select Comfort Retail Corp.*,
   2009 WL 1635931 (N.D. Cal. June 5, 2009)..........................................25

*Stewart v. Kodiak Cakes, LLC*,
   537 F. Supp. 3d 1103 (S.D. Cal. 2021).............................................23, 24

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009)................................................................................15

*Swearingen v. Yucatan Foods, L.P.*,
   59 F. Supp. 3d 961 (N.D. Cal. 2014)......................................................20

*Taradejna v. Gen. Mills, Inc.*,
   909 F. Supp. 2d 1128 (D. Minn. 2012)...................................................21

*In re Vaccine Cases*,
   134 Cal. App. 4th 438 (2005) .................................................................16

v

*Villacres v. ABM Indus. Inc.*,
     189 Cal. App. 4th 562 (2010) ....................................................................17, 18

*Wallace v. ConAgra Foods, Inc.*,
     747 F.3d 1025 (8th Cir. 2014) ...................................................................10, 11

*Weaver v. Champion Petfoods USA Inc.*,
     2019 WL 2774139 (E.D. Wis. July 1, 2019).....................................................24

*Wilson v. Hewlett-Packard Co.*,
     668 F.3d 1136 (9th Cir. 2012) .........................................................................23

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
     2022 WL 17480906 (S.D. Fla. Dec. 6, 2022).....................................................14

*Zeller v. Optavia, LLC*,
     2022 WL 17858032 (S.D. Cal. Dec. 22, 2022) ...........................................22, 25

**Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq*. ....................................................................9

Cal.  Bus. & Prof. Code § 17500, *et seq*. ...................................................................9

Cal. Civ. Code § 1750, *et seq*.....................................................................................9

Cal. Health & Saf. Code § 25249.7 .....................................................................15, 18

Cal. Health & Saf. Code § 25249.10 *et seq*. ..........................................................5, 6

**Other Authorities**

Brief of Amicus Curiae, *Consumer Cause, Inc. v. SmileCare*,
     2001 WL 34157470 (Cal. App. 2 Dist. April 17, 2001)......................................6

Cal. Rules of Court 8.1125(d)...................................................................................19

California Office of Environmental Health Hazard Assessment,
     *Proposition 65 Maximum Allowable Daily Level (MADL) for*
     *Reproductive Toxicity for Cadmium* (May 2001),
     https://tinyurl.com/4p4kh8fx ...............................................................................6

vi

Consent Judgment, Case No. CGC-15-548791 (Cal. Super. Ct. San Francisco Cnty. Feb. 15, 2018), https://tinyurl.com/68uknrvx ......................6, 17

Consumer Reports, *Test Methodology: Heavy Metals in Chocolate Bars*, January 2023, https://tinyurl.com/3xjcm9zs ..........................................8, 11

December 4, 2019 Letter from Supervising Deputy AG Harrison M. Pollak, https://tinyurl.com/48zs4c78 .............................................................7

FDA, *Closer to Zero: Reducing Childhood Exposure to Contaminants from Foods* ("Action Plan"), http://tinyurl.com/56mmcfea .............................4, 5

FDA, *Closer to Zero: Trends in Exposure to Toxic Elements from Foods*, https://tinyurl.com/29pnavet......................................................................3

FDA, *FDA Announces New Actions Aimed at Further Reducing Toxic Elements in Food for Babies, Young Children* (March 5, 2021), http://tinyurl.com/mr3jcj5y ("FDA 3/5/21 Statement") .......................................3

FDA, *Justifications and Estimates for Appropriation Committees*, April 2022, https://tinyurl.com/3vrxw787 ...............................................5

FDA, *Science Board Agenda* (December 8, 2022), https://tinyurl.com/4ata4rrc.................................................................5

FDA, *Supporting Document for Recommended Maximum Level for Lead in Candy* (November 2006), https://tinyurl.com/2jdvvwmw .....................3

FDA, *Supporting Document for Recommended Maximum Level for Lead in Candy*, *supra* note 5 ..................................................................4

FDA, Transcript of Public Meeting Docket No. FDA-2021-N-0966 at 14 (Nov. 18, 2021), https://www.fda.gov/media/155396/download....................4

FDA, *Draft Guidance: Action Levels for Lead in Juice* (April 2022), https://tinyurl.com/47a4j2b2;...............................................................5

FDA, *FDA Announces Action Levels for Lead in Categories of Processed Baby Foods* (Jan. 24, 2023), https://tinyurl.com/38pk7my8...............................................................3, 5

vii

FDA, *FDA Releases Action Plan for Reducing Exposure to Toxic Elements from Foods for Babies, Young Children* (April 8, 2021), https://tinyurl.com/ypx8m5pe.................................................................................3, 4

Feb. 1, 2021 Letter from Deputy AG Susan Fiering, https://tinyurl.com/yc6e4vnw ........................................................................7

Kevin Loria, *Lead and Cadmium Could Be in Your Dark Chocolate*, Consumer Reports (Dec. 15, 2022), https://tinyurl.com/4fsb26tv .................7, 11

viii

**PRELIMINARY STATEMENT**

Pollution is an unfortunate fact of modern life. Because environmental contaminants are inevitably present in the air, water and soil, it is impossible to guarantee that any food product is absolutely free of them, even at infinitesimal trace levels.

This case involves two such contaminants: lead and cadmium, which are considered "heavy metals." The U.S. Food and Drug Administration ("FDA") has repeatedly recognized that heavy metals "are unavoidable in the general food supply"; that "it is not possible to prevent or remove [them] entirely from foods"; and that there are "limits to how low [heavy metals] levels [in foods] can be." At the same time, FDA has made clear that the mere "presence" of heavy metals in a food at detectible trace levels "does *not* mean the food is unsafe to eat."

Plaintiff is a California consumer who purchased chocolate bars manufactured by Hershey. Based solely on a December 2022 article published in *Consumer Reports*, she alleges that the bars she purchased contained lead and cadmium in trace amounts. She does not claim to have suffered any physical injury from consuming the chocolate bars, or that she is at imminent risk of such harm. Instead, she alleges that she would not have bought the bars or would have paid less for them had she known they contained traces of lead or cadmium. On this basis, Plaintiff seeks, on behalf of herself and a nationwide class, a full or partial refund of the purchase price paid for the products at issue.

Plaintiff's claims fail on numerous grounds, including that she does not, and cannot, allege an injury-in-fact. That *Consumer Reports* detected traces of lead and cadmium in two or three product samples does not indicate that the chocolate bars Plaintiff herself purchased contained those contaminants. And regardless, Plaintiff's subjective "belie[f]" that Hershey's products would be 100% free of lead or cadmium was not part of the parties' bargain. Plaintiff concedes that Hershey never

1

promised, in words or substance, that its products were utterly lead- and cadmium-free.  At most, Hershey implicitly promised products that could be safely consumed—and that is what Plaintiff received.  The lead and cadmium levels *Consumer Reports* detected are well within the ranges that state and federal regulators repeatedly have deemed safe.  Under these circumstances, Plaintiff has not plausibly alleged an injury sufficient to confer Article III standing.  If the law were otherwise, consumers would suffer an injury-in-fact practically every time they purchase a food product—a result that other courts have rightly deemed "preposterous."

The Complaint should also be dismissed on several other grounds, *e.g.*:

- The claims in this action are disguised Proposition 65 claims, but Plaintiff failed to comply with Proposition 65's mandatory prerequisites to suit, including providing pre-suit notice and a "certificate of merit."

- Plaintiff's claims are barred by a consent judgment entered by a California court and ratified by California's Attorney General, which sets specific lead and cadmium thresholds below which Hershey need not place warnings on its products.  The levels alleged here fall well below those limits.

- Plaintiffs' claims should be dismissed under the primary jurisdiction doctrine, because FDA is currently reviewing the relevant science and issuing guidelines concerning lead and cadmium levels in foods.

In short, *everything* is wrong with this lawsuit.  The purchase of a product that contains infinitesimal traces of a ubiquitous environmental contaminant cannot give rise to a claim.  The Complaint should be dismissed, in its entirety, with prejudice.

## STATEMENT OF FACTS

### A.  Hershey and its Products

Hershey sells chocolate and confectionery products throughout the United States.  *Id.* ¶ 1. These include the three products at issue: Hershey's Special Dark

2

Mildly Sweet, Lily's Extra Dark 70% Cocoa, and Lily's Extreme Dark 85% Cocoa.

**B.      Lead and Cadmium in the Food Supply**

Lead and cadmium are naturally occurring metallic elements, sometimes referred to as "heavy metals."  As FDA has repeatedly explained, they "are present in the environment, including in our air, water and soil, and therefore are unavoidable in the general food supply."[1] "[I]t is not possible to prevent or remove lead [or cadmium] entirely from foods,"[2] and there are "limits to how low [heavy metals] levels [in foods] can be."[3]  FDA has thus emphasized that the mere "presence" of lead or cadmium in a food "does *not* mean the food is unsafe to eat."[4]  In other words, "foods may contain unavoidable but small amounts of lead [or cadmium] that do not pose a significant risk to human health."[5]

**C.      FDA's Regulation of Lead and Cadmium in Food**

Pursuant to its congressional mandate, FDA has taken (and is taking) various actions concerning lead and cadmium in foods.  These actions already have "resulted in significant progress in reducing" heavy metal exposure from foods, including a 97% "decline in lead exposure from foods" since 1980.[6]

**1.      FDA's 2006 Guidance Concerning Candy for Children**

In 2006, FDA issued guidance setting maximum lead levels for "candy likely

---

[1] FDA, *FDA Announces New Actions Aimed at Further Reducing Toxic Elements in Food for Babies, Young Children* (March 5, 2021), https://tinyurl.com/4ue83xsc ("FDA 3/5/21 Statement").

[2] FDA, *FDA Announces Action Levels for Lead in Categories of Processed Baby Foods* (Jan. 24, 2023), https://tinyurl.com/38pk7my8 ("FDA 1/24/23 Statement").

[3] FDA, *FDA Releases Action Plan for Reducing Exposure to Toxic Elements from Foods for Babies, Young Children* (April 8, 2021), https://tinyurl.com/ypx8m5pe.

[4] FDA 1/24/23 Statement, *supra* note 2 (emphasis added).

[5] FDA, *Supporting Document for Recommended Maximum Level for Lead in Candy* (November 2006), https://tinyurl.com/2jdvvwmw.

[6] FDA, *Closer to Zero: Trends in Exposure to Toxic Elements from Foods*, https://tinyurl.com/29pnavet.

3

to be consumed frequently by small children," including chocolate.  In particular, FDA determined that a maximum lead level of "0.1 ppm [(parts per million)]"—equivalent to 100 ppb (parts per billion)—would be sufficiently "protective of public health" and "would not pose a significant risk to small children for adverse health effects."  The agency emphasized that this 100 ppb limit for children's candy was "consistent with" the FDA's longstanding goal of "reduc[ing] consumers' lead exposure to the lowest level that can practicably be obtained."[7]

### 2.    FDA's "Closer To Zero" Action Plan

In April 2021, FDA announced its "Closer to Zero" Action Plan, a regulatory initiative "to reduce exposure" to heavy metals in foods "to as low as possible."  The initiative will result in the issuance of limits on heavy metals "in [various] categories of ... foods commonly eaten by babies and young children."  The plan also will advance research on the effects of dietary exposure to these metals, encourage "best practices by industry," and increase "compliance and enforcement activities."[8]

In announcing its "Closer to Zero" plan, FDA emphasized that its own "testing has shown there's no immediate health risk to children from exposure to [lead or cadmium] at the levels currently found in food."[9]  It stressed that eliminating all such metals from foods is impossible, and that there are "limits to how low these levels can be."[10]  And it warned that taking precipitous measures could have "unintended consequences—like eliminating [foods] from the marketplace ... or reducing the

---

[7] FDA, *Supporting Document for Recommended Maximum Level for Lead in Candy*, *supra* note 5.

[8] FDA, *Closer to Zero: Reducing Childhood Exposure to Contaminants from Foods* ("Action Plan"), http://tinyurl.com/56mmcfea; *see also* 86 Fed. Reg. 56711 (Oct. 12, 2021).

[9] FDA, Transcript of Public Meeting Docket No. FDA-2021-N-0966 at 14 (Nov. 18, 2021), https://www.fda.gov/media/155396/download.

[10] FDA, *FDA Releases Action Plan*, *supra* note 3.

presence of one element while increasing another."[11]

FDA already has taken a number of actions pursuant to its Closer to Zero plan. For example, in 2022, it updated its Interim Reference Level for lead (*i.e.*, the daily consumption limit) for children and women of childbearing age; issued guidance concerning lead levels in children's juices; completed a systematic review of adverse health effects from cadmium consumption; and conducted modeling of cadmium dose response.[12]  In January 2023, FDA issued guidance concerning maximum lead levels in several categories of baby foods.[13]  Presently, FDA is "continu[ing] to gather data and collaborate with federal partners to establish the scientific basis for establishing Interim Reference Levels" for cadmium, and considering action levels for additional categories of foods.[14]  The agency has recently signaled that it intends to expand upon "its maternal and infant health and nutrition focus [from] 2022" to focus on "reducing exposure to harmful chemicals and toxins in food" consumed by "Americans of all ages and backgrounds."[15]

**D.     Proposition 65 and the California Consent Judgment**

California's statutory regime known as Proposition 65 requires manufacturers to place warnings on products that contain listed substances, including lead and cadmium, at levels in excess of specified Maximum Allowable Dose Levels ("MADLs").[16]  Proposition 65's MADLs do ***not*** indicate the thresholds at which a particular substance poses a danger to human health.  California sets the MADL for

---

[11] Action Plan, *supra* note 8.

[12] *Id.*; FDA, *Draft Guidance: Action Levels for Lead in Juice* (April 2022), https://tinyurl.com/47a4j2b2; FDA, *Science Board Agenda* (December 8, 2022), https://tinyurl.com/4ata4rrc.

[13] FDA 1/24/23 Statement, *supra* note 2.

[14] *Id.*

[15] FDA, *Justifications and Estimates for Appropriation Committees*, April 2022, at 16-17, https://tinyurl.com/3vrxw787.

[16] *See generally* Cal. Health & Saf. Code § 25249.10 *et seq.*

a given substance by consulting the scientific literature to determine the substance's "No Observable Effect Level"—*i.e.*, the highest exposure level at which no observable health effect is expected. California then divides the No Observable Effect Level *by 1,000* to determine the MADL. Thus, as California's courts and Attorney General have recognized, exposure to a substance even "at a level 1,000 times greater than the MADL" is "expected to have no observable effect."[17]

In November 2015, an organization called As You Sow ("AYS") filed a Proposition 65 suit against various chocolate manufacturers, including Hershey, asserting that their products contained lead and cadmium at levels exceeding California's MADLs. In February 2018, the California Superior Court for the County of San Francisco entered a consent judgment among AYS, Hershey, and others (the "Consent Judgment"), after finding that the proposed judgment "me[t] the requirements of [California law] and [was] in the public interest," and after the judgment was endorsed by California's Attorney General.[18] The Consent Judgment remains in force until at least December 2024.[19]

The Consent Judgment displaced the default MADLs for lead and cadmium under the Proposition 65 regime and substituted new limits specifically applicable to the settling defendants' products. For products with cacao content less than or equal to 65% (which includes Hershey's Special Dark), the maximum permissible lead level is now 0.1 ppm (100 ppb), and the maximum permissible cadmium level is now 0.4 ppm (400 ppb). For products with cacao content greater than 65% and

---

[17] *See* California Office of Environmental Health Hazard Assessment, *Proposition 65 Maximum Allowable Daily Level (MADL) for Reproductive Toxicity for Cadmium* (May 2001), https://tinyurl.com/4p4kh8fx; *accord* Cal. Health & Saf. Code § 25249.10(c); Brief of Amicus Curiae Attorney General, *Consumer Cause, Inc. v. SmileCare*, 2001 WL 34157470, at *4 (Cal. App. 2 Dist. April 17, 2001).

[18] *See* Consent Judgment, Case No. CGC-15-548791 (Cal. Super. Ct. San Francisco Cnty. Feb. 15, 2018), at 2-20, https://tinyurl.com/68uknrvx.

[19] *Id.* at 31.

up to 95% (which includes the two Lily's products at issue), the maximum permissible lead level is now 0.15 ppm (150 ppb) and the maximum permissible cadmium level is now 0.45 ppm (450 ppb).  The Consent Judgment specifies that "compliance with [these limits] ... shall be deemed to constitute compliance ... with Proposition 65 regarding ... lead and/or cadmium" in chocolate.[20]

The Consent Judgment operated as a "full, final, and binding resolution" of AYS's claims—not only on its own behalf, but also "on behalf of the general public in the public interest."[21]  On multiple occasions since the Consent Judgment's approval, the California Attorney General has issued letters finding that attempted private suits against chocolate companies are meritless in light of the companies' compliance with the Consent Judgment.[22]

**E.    The *Consumer Reports* Article**

In December 2022, *Consumer Reports* published an article that claimed to have detected lead and cadmium in various manufacturers' dark chocolate products.[23]  The article stated that the lead and cadmium levels detected in some tested products, including the Hershey products challenged here, exceeded Proposition 65's MADLs for lead and cadmium.  It also asserted that the MADLs represent levels at which lead or cadmium consumption "may be harmful."  Compl. ¶ 2.

*Consumer Reports* neglected to mention, however, that California's MADLs were intentionally set *1,000 times lower* than the threshold at which any effect on health would be expected.  *Supra* at 6.  *Consumer Reports* also failed to note that the

---

[20] *Id.* at 17-18, 30.

[21] *Id.* at 29.

[22] December 4, 2019 Letter from Supervising Deputy AG Harrison M. Pollak, https://tinyurl.com/48zs4c78; Feb. 1, 2021 Letter from Deputy AG Susan Fiering, https://tinyurl.com/yc6e4vnw.

[23] Kevin Loria, *Lead and Cadmium Could Be in Your Dark Chocolate*, Consumer Reports (Dec. 15, 2022), https://tinyurl.com/4fsb26tv.

Consent Judgment set less-stringent lead and cadmium limits that displace the MADLs for chocolate products.  As shown below, the lead and cadmium levels that *Consumer Reports* claimed to have found in Hershey's products are substantially lower than limits set by both the Consent Judgment and FDA's 2006 guidance:

### Comparison of Detected and Permitted Lead Levels[24]

| Product Name | Lead Level Detected by *CR* (% of CA MADL) | Lead Level Detected by *CR* (converted to ppb) | Lead Level Permitted Under Consent Judgment | Lead Level Permitted by FDA Candy Guidance |
|---|---|---|---|---|
| Special Dark | 265% | **44 ppb** | 100 ppb | 100 ppb |
| Lily's 70% | 144% | **24 ppb** | 150 ppb | 100 ppb |
| Lily's 85% | 143% | **24 ppb** | 150 ppb | 100 ppb |

### Comparison of Detected and Permitted Cadmium Levels

| Product Name | Cadmium Level Detected by *CR* (% of CA MADL) | Cadmium Level Detected by *CR* (converted to ppb) | Cadmium Level Permitted Under Consent Judgment | Cadmium Level Permitted by FDA Candy Guidance |
|---|---|---|---|---|
| Special Dark | 30% | **41 ppb** | 400 ppb | n/a |
| Lily's 70% | 42% | **57 ppb** | 450 ppb | n/a |
| Lily's 85% | 101% | **138 ppb** | 450 ppb | n/a |

Although *Consumer Reports* overlooked these critical points, the article did include this caveat: "Our results indicate which products had comparatively higher levels and are not assessments of whether a product exceeds a legal standard."

---

[24] *Consumer Reports* provided the products' cadmium and lead levels as a percentage of California's MADL, rather than in parts per billion (ppb).  However, these figures can be converted to ppb by multiplying the reported percentages by the relevant MADL (0.5 μg for lead, or 4.1 μg for cadmium); dividing the resulting figure by 30, since *Consumer Reports* based its MADL calculations on the assumption that consumers would eat one 30 gram (*i.e.*, 30 million μg) serving per day; and then multiplying by 1,000 to convert from parts per million to parts per billion.  For example, *Consumer Reports*' finding that the lead level in Hershey's Special Dark was 265% of California's MADL means that the lead levels detected were ((2.65 * 0.5 μg) / 30 g) * 1,000), or 44 parts per billion (ppb).  *See* Loria, *supra* note 23 (explaining methodology); Consumer Reports, *Test Methodology: Heavy Metals in Chocolate Bars*, January 2023, https://tinyurl.com/3xjcm9zs (further explanation of test methodology linked to in *Consumer Reports* article).

### F.    Plaintiff's Complaint

Plaintiff, a California consumer, alleges that she purchased Lily's 85% bars during the Class Period.  Compl. ¶ 36.  At the time, she purportedly "believed" that the bars would be 100% "free from" lead and cadmium, *id.* ¶ 30, though she identifies no statement in Hershey's labeling or advertising to that effect.  Plaintiff asserts that she would not have purchased the bars had she known they "contain[ed] lead or cadmium" in any amount.  *Id.* ¶¶ 40-41.  However, she does not allege that she suffered, or will suffer, any adverse health effects from consuming the chocolate bars.

Based on these allegations, Plaintiff asserts claims for violation of the Unfair Competition Law ("UCL"), Cal.  Bus. & Prof. Code § 17200, *et seq.*, False Advertising Law ("FAL"), *id.* § 17500, *et seq.*, and California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, and brings common-law claims for breach of implied warranty and unjust enrichment.  Plaintiff seeks to represent a nationwide class of "all persons" who purchased the relevant products "at any time from four years preceding the date of the filing of [the] Complaint."  Compl. ¶ 47.

## ARGUMENT

## I.    PLAINTIFF LACKS ARTICLE III STANDING

A complaint "must 'clearly ... allege facts demonstrating' each element" of standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  "To establish injury in fact," the core requirement of standing, "a plaintiff must [plead] ... 'an invasion of a legally protected interest' that is 'concrete and particularized.'"  *Id.* at 339.  In other words, the asserted injury "must affect the plaintiff in a personal and individual way," and must be "real," not "abstract."  *Id.* at 339-40.  Plaintiff fails to plead an injury-in-fact under these standards, and therefore lacks Article III standing.

### A.    Plaintiff Makes No Plausible Allegation of Economic Injury

Plaintiff's claimed injury-in-fact is economic only: she alleges that "the

Products were worth less than what [she] and the Class Members paid for them." Compl. ¶ 42. But to plausibly plead standing, it is not enough for Plaintiff to "simply characterize [her] purchasing decision as an economic injury." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 281 (3d Cir. 2018), *cited with approval by McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020). Rather, she must "allege facts that would permit a factfinder to determine, without relying on mere conjecture, that [she actually] failed to receive the economic benefit of her bargain." *Talcum Powder*, 903 F.3d at 281, 285; *see also Caudel v. Amazon.com, Inc.*, 2021 WL 4819602, at *3 (E.D. Cal. Oct. 15, 2021) (finding lack of injury-in-fact, despite complaint's allegation that plaintiff "receive[d] a product worth less than" the purchase price, where the alleged diminution in value was insufficiently "distinct and palpable" to satisfy plausibility test).

Plaintiff fails to plead a non-conclusory benefit-of-bargain harm. First, she does not allege, beyond mere conjecture, that the particular Lily's bars *she* purchased contained lead or cadmium at all. Second, even if Plaintiff bought Lily's bars with the lead and cadmium levels detected by *Consumer Reports*, she does not plausibly allege that those products failed to provide any benefit she bargained for.

1. Plaintiff Fails to Plead that She Personally Purchased a Chocolate Bar Containing Any Detectible Lead or Cadmium

To allege a concrete and particularized benefit-of-bargain injury, "it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030-31 (8th Cir. 2014). Here, Plaintiff does not allege that she tested the particular Lily's bars she purchased, or that she suffered any physical symptoms of lead or cadmium consumption. Her sole support for the conclusion that those bars contained lead and cadmium is the *Consumer Reports* article. Compl. ¶ 2.

10

But that article, on its face, did not purport to make findings about *all* chocolate bars that Hershey manufactured and sold during the Class Period. *Consumer Reports* "tested 2–3 samples" of each product featured in the story that were purchased in "April and May 2022" in the "New York area."[25]  It would be sheer speculation to extrapolate those findings to the Lily's bars that Plaintiff purchased.  After all, lead and cadmium are inadvertent contaminants, not intentionally included ingredients, and—as *Consumer Reports* recognizes—levels in a product "can vary."[26]

Absent "any particularized reason to think [Plaintiff's] own [chocolate bars] … actually exhibited" the alleged lead or cadmium defect, it is "pure speculation to say" that she failed to receive the benefit of her bargain. *Wallace*, 747 F.3d at 1030-31.  Courts routinely have refused to credit plaintiffs' conclusory allegations that *they* purchased contaminated products merely because inadvertent contamination occurred in other units in the same product line.  *See Pels v. Keurig Dr. Pepper, Inc.*, 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) (plaintiff "failed to plead a particularized injury" where he "fail[ed] to allege *he* tested the [particular bottle of water] he purchased for arsenic," and "rel[ied] instead on [testing by] *Consumer Reports*" of samples he never purchased); *Rooney v. Procter & Gamble Co.*, 2022 WL 17092124, at *3 (E.D. La. Nov. 21, 2022) (refusing to credit "conclusory" allegation that "the cans of Secret [Plaintiff purchased] contained benzene" based on third-party test results that could not be extrapolated to all cans of Secret).

      2.  Even If Plaintiff Purchased a Chocolate Bar with Lead or Cadmium at the Levels Claimed by *Consumer Reports*, She Still Lacks Standing

Even if the particular Lily's bars that Plaintiff purchased contained lead and cadmium at the trace levels detected by *Consumer Reports*, that still would not

---

[25] Consumer Reports, *Test Methodology*, *supra* note 24.

[26] *See* Loria, *supra* note 23.

establish that she failed to receive the benefit of her bargain.

Plaintiff alleges that, at the time of her purchases, she "*believed* the Products were free from" lead and cadmium at any level.  Compl. ¶ 30 (emphasis added).  But to plead injury on a benefit-of-bargain theory, "[a] plaintiff ... must do more than allege that she 'did not receive [a] benefit she *thought* she was obtaining.'  [She] must show that she did not receive a benefit for which she actually *bargained*.'" *McGee*, 982 F.3d at 706; *see also Russo v. Microsoft Corp.*, 2021 WL 2688850, at *6 n.7 (N.D. Cal. June 30, 2021) (explaining that there is "no standing under [a] 'benefit of the bargain' theory based on mere assumptions or beliefs").  In other words, for a product characteristic to be part of the parties' bargain, either the seller must have affirmatively promised it, or there must be some independent legal (*e.g.*, statutory, regulatory or common-law) duty to provide it.

Plaintiff does not allege that Hershey stated—in words or substance—that its products would be 100% free of lead and cadmium.  And Plaintiff points to no independent legal duty to provide such a product.[27]  Under these circumstances, Plaintiff's subjective "belie[f]" that she would receive a product 100% free of lead and cadmium "was not part of the [parties'] bargain." *McGee*, 982 F.3d at 706; *cf. Russo*, 2021 WL 2688850, at *6 n.7 (no benefit-of-bargain standing where plaintiffs "d[id] not allege that they saw any misrepresentation [about data security] ... but merely 'believed' that their data would be secure").  Stated otherwise, Plaintiff cannot plausibly plead a "[b]enefit of bargain" injury premised only on the "subjective allegation that the trace amounts" of lead and cadmium at issue "are unacceptable to *her*." *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010).

---

[27] Plaintiff alleges, in conclusory fashion, that any food containing lead or cadmium is "misbranded" in violation of FDA regulations, and thus, in violation of California statutes that incorporate those regulations by reference.  Compl. ¶ 35.  However, Plaintiff points to no actual FDA regulation requiring *zero* lead or cadmium.  To the contrary, FDA has repeatedly stated that this is not possible. *Supra* at 3.

To be sure, sales of goods generally entail an implicit promise that the goods are not objectively dangerous.  The question, then, is whether Plaintiff plausibly pleads that the trace lead and cadmium levels at issue posed an objective danger to her health.  *See Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488, at *6 (D.N.J. Apr. 25, 2022) (noting that, where a product containing trace contaminants nonetheless "perform[s] [its] intended purpose" without creating a plausible "risk of [physical] harm," there is no "benefit of the bargain" injury); *Herrington v. Johnson & Johnson Consumer Cos.*, 2010 WL 3448531, at *4 (N.D. Cal. Sept. 1, 2010) (same).

The answer to that question is "no."  Plaintiff's theory that the Lily's bars she purchased were dangerous rests entirely on the fact that the bars tested by *Consumer Reports* contained lead and cadmium in amounts slightly exceeding California's MADLs.  However, as explained above, MADLs are not cutoffs indicating the point where lead or cadmium content becomes a health risk.  By definition, lead or cadmium exposure would have to exceed the MADL *by a factor of 1,000* before having any expected effect on human health.  *Supra* at 6.  The levels detected by Consumer Reports fell short of that threshold by several orders of magnitude.

Published statements by government authorities confirm the lack of any plausible health threat here.  As noted above, FDA's position is that a lead level of 100 ppb in chocolate "would not pose a significant risk to small children for adverse health effects."  *Supra* at 4.  The lead level allegedly present in Lily's 85% bars—24 ppb—was less than 25% of that amount.  If lead at this level poses no significant risk to small children, then *a fortiori*, it poses no plausible risk to an adult consumer such as Plaintiff.  *See* Compl. ¶ 13 (alleging that lead consumption poses greater risks to children than adults).  *Cf. Kimca*, 2022 WL 1213488, at *6-7 (finding lack of benefit-of-bargain standing in case alleging undisclosed heavy metals, where "the FDA [had] stated" that the levels at issue did not pose any "immediate health risk");

*Koronthaly*, 374 F. App'x at 259 (same, where "FDA's report [had stated] that the lead levels in Defendants' lipsticks were not dangerous"). Likewise, when ratifying the Consent Judgment, the California Superior Court and Attorney General agreed that lead levels up to 150 ppb, and cadmium levels up to 450 ppb, in a dark chocolate product are safe enough not to require any disclosure to consumers. *Supra* at 6-7. The lead and cadmium levels allegedly present in Lily's 85% bars, which are just 16% and 31% of the Consent Judgment limits, do not pose a plausible risk to health.

Plaintiff broadly asserts that there "*may* be no safe level" of lead or cadmium. Compl. ¶¶ 14-15 (emphasis added). But this allegation not only lacks factual support; it contradicts the FDA's guidance, which emphasizes that the mere "presence" of some lead or cadmium in a food "does not mean the food is unsafe to eat." *Supra* at 3. Indeed, Plaintiff's "any amount may be dangerous" allegation "ignore[s] fundamental principles of toxicology." *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 672-76 (7th Cir. 2017); *cf. In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2022 WL 17480906, at *17 (S.D. Fla. Dec. 6, 2022) (courts "universally reject … the idea that any amount of a carcinogen, no matter how small, is actionable"). For these reasons, several courts have recently dismissed similar complaints, despite conclusory allegations that the trace contaminants were "unsafe." *See, e.g.*, *Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488, at *8 (D.N.J. Apr. 25, 2022); *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, 2022 WL 10197651, at *6-7 (E.D. Va. Oct. 17, 2022).

In sum, Plaintiff's subjective expectation that Hershey's products would be utterly free of lead or cadmium was not part of the parties' bargain. And the Complaint lacks any plausible allegation that the levels of lead or cadmium detected by *Consumer Reports* posed an objective danger to her health. In short, "Plaintiff does not plausibly allege that [s]he 'bargained for' anything other than [safe chocolate bars], and that is what [s]he got." *Dozier v. Walmart Inc.*, 2021 WL 1534973, at *5

(C.D. Cal. Mar. 5, 2021).  Plaintiff, therefore, has not "allege[d] facts" showing, beyond "mere conjecture, that [she] failed to receive the economic benefit of her bargain."  *Talcum Powder*, 903 F.3d at 281.

### B.  Plaintiff Alleges No "Real and Immediate" Future Injury

Even if the Lily's products Plaintiff purchased contained unsafe levels of lead and/or cadmium (which they do not), Plaintiff lacks Article III standing to seek injunctive relief, because she does not plausibly allege a "real and immediate threat of repeated injury."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  The only circumstance under which Plaintiff alleges she might purchase Hershey's products again is if "she could be assured ... that the Products no longer contained lead or cadmium."  Compl. ¶ 44.  For the reasons explained above, the possibility that Hershey would be able to eliminate all traces of lead or cadmium from its chocolate products at any time in the imminent future is "conjectural or hypothetical" at best.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  Thus, there is no plausible possibility—let alone a "real and immediate" one—that Plaintiff will receive the "assur[ance]" she needs to purchase Hershey's products again.

## II.  THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO COMPLY WITH THE PREREQUISITES OF PROPOSITION 65

At least 60 days before filing a Proposition 65 suit, a private plaintiff must provide the defendant and state prosecutors (including the Attorney General) with a "certificate of merit" stating that she "has consulted with ... persons with relevant and appropriate experience or expertise who has reviewed facts, studies, or other [relevant] data … and that, based on that information, the person executing the certificate believes there is a reasonable and meritorious case for the private action."  Cal. Health & Saf. Code § 25249.7(d)(1).  The purpose of this requirement is "to prevent groundless, frivolous lawsuits before they are filed by providing factual data to prosecuting entities, which allows prosecuting entities to assess the merits of the

15

claim" and "to resolve the matter with the alleged violator before a complaint is filed." *In re Vaccine Cases*, 134 Cal. App. 4th 438, 456 (2005). "California cases strictly enforce" this requirement, *Gutierrez v. John & Johnson Consumer, Inc.*, 2020 WL 6106813, at *3 (S.D. Cal. Apr. 27, 2020), and "the complaint itself must allege" that it has been met, *Vaccine Cases*, 134 Cal. 4th at 456.

Although Plaintiff has not expressly brought suit under Proposition 65, "[a] plaintiff cannot sidestep [Proposition 65's] requirements by trying to use" consumer protection statutes or common-law theories "to plead around a claim that would be barred under Proposition 65." *Harris v. R.J. Reynolds Vapor Co.*, 2016 WL 6246415 at *2 (N.D. Cal. Sept. 30, 2016); *see also Gutierrez*, 2020 WL 6106813, at *5; *Vaccine Cases*, 134 Cal. App. 4th at 458-59. Here, Plaintiffs' claims are Proposition 65 claims in substance, as they are all premised on Hershey's alleged failure to disclose lead and cadmium at levels in excess of Proposition 65's MADLs. "[A]ny duty" Hershey may have to make such disclosures "is inextricably bound up with Proposition 65," because Proposition 65 "regulates the level of [lead and cadmium] that can exist in a product without triggering a duty to disclose." *Gutierrez*, 2020 WL 6106813, at *5; *see also Harris*, 2016 WL 6246415, at *2.

Plaintiff fails to allege that she complied with Proposition 65's prerequisites to suit; nor could she so allege. If she had complied, the Attorney General would have informed her—as it has informed others in her position—that her claims lack merit because they are inconsistent with the Consent Judgment. *Supra* at 7. This defect "cannot be [] cured," and it requires dismissal of her entire Complaint "with prejudice." *Gutierrez*, 2020 WL 6106813, at *3.

## III.  THE CONSENT JUDGMENT BARS PLAINTIFF'S CLAIMS

Even if Plaintiffs' claims are not Proposition 65 claims, they are nonetheless barred by the Consent Judgment in the AYS action.

16

First, Plaintiffs' claims are *res judicata*.  The Consent Judgment was a "full, final, and binding resolution ... of any alleged violation of Proposition 65 for failure to provide ... warnings of exposure to lead and/or cadmium in the Covered Products"—not just on behalf of AYS, but also "on behalf of the general public in the public interest."[28]   "[D]efendants" like Hershey "who enter into a comprehensive settlement for the benefit of the public have an interest in finality and in being free from a series of additional suits from members of the public, the same class that was represented in the first suit."  *Consumer Advocacy Grp., Inc. v. ExxonMobil Corp.*, 168 Cal. App. 4th 675, 690 (2008).

In particular, "[u]nder the doctrine of res judicata, a valid, final judgment on the merits is a bar to a subsequent action by parties or their privies on the same cause of action."  *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 575-77 (2010).  Crucially, "cause of action" in this context is construed broadly: it encompasses any claim "related to the subject matter and relevant to the issues" in the prior action, "so that it *could* have been raised" in that suit—irrespective of whether it was *actually* raised.  *Id.* (emphasis in original).  That the second suit seeks "different forms of relief" or raises different "legal theor[ies]" is immaterial.  *Id.*

Here, Plaintiff is a member of the "general public" whose legal interests were represented by AYS and the Attorney General, and whose claims were expressly released in the AYS litigation.  *See Citizens for Open Access v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1070-74 (1998) (where Attorney General approved settlement agreement in earlier public-interest suit, plaintiff, as a member of the public, was in privity with Attorney General for *res judicata* purposes); *Gates v. Superior Court*, 178 Cal. App. 3d 301, 305-08 (1986) (taxpayer suing in a representative capacity on behalf of "general public" was in privity with taxpayer who had previously done the

---

[28] Consent Judgment, *supra* note 18 at 29-30.

same).  Plaintiff's claims here are indisputably "related to the subject matter and relevant to the issues" litigated on behalf of the California public in the AYS suit, and are therefore barred.  *Villacres*, 189 Cal. App. 4th at 575-77.

Second, Plaintiff's claims are barred by the "safe harbor" doctrine.  That rule holds that, where the Legislature (or its designated agent) has "considered a situation and concluded no action should lie, courts may not override that determination" via California's open-ended consumer protection statutes.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999); *see, e.g.*, *Baum v. J-B Weld Co., LLC*, 2020 WL 4923624, at \*2-3 (N.D. Cal. Aug. 21, 2020) ("[T]he California legislature did not intend a claim of false 'Made in USA' representations to lie where the 5% safe harbor is not exceeded.").

Here, Proposition 65 delegates to California's Attorney General the authority to determine, in the public interest, when enforcement of Proposition 65's warning requirements is appropriate.  *See* Cal. Health & Saf. Code § 25249.7(c), (f)(5); *Consumer Def. Grp. v. Rental Hous. Indus. Members*, 137 Cal. App. 4th 1185, 1206 (Cal. Ct. App. 2006) ("The one party who *necessarily* represents the public interest in any Proposition 65 litigation is the Attorney General.").  The Attorney General exercised this authority by endorsing the Consent Judgment, which provides that Hershey need not warn about lead or cadmium unless present at levels far higher than those alleged here.  *See supra* at 6-7.  Thus, the very entity chosen by the Legislature to make such determinations has conclusively decided that "no action should lie" for non-disclosure of lead or cadmium on these facts.  Courts may not second-guess that determination by deeming Hershey's conduct in compliance with the Consent Judgment and Proposition 65 a "fraudulent" or "unfair" practice.[29]

---

[29] *Cf. Price v. Philip Morris, Inc.*, 848 N.E.2d 1, 50 (Ill. 2005) (safe harbor doctrine precluded consumer protection claim where FTC consent order approved challenged label); *Mulford v. Altria Grp., Inc.*, 506 F. Supp. 2d 733, 762 (D.N.M. 2007) (same).

This case closely resembles *Charles v. Sutter Home Winery, Inc.*, 232 Cal. Rptr. 3d 513, 522 (Cal. Ct. App. 2018), *review denied and ordered depublished*, (Cal. Aug. 8, 2018).[30]   There, the plaintiff alleged that the defendants' wines "contain[ed] ... unsafe levels of ... arsenic," and that the failure to disclose that fact violated Proposition 65, as well as the UCL, CLRA, FAL and common law.  232 Cal. Rptr. 3d at 516, 527-28.  The challenged wines' label already bore a warning whose sufficiency had been "central to" a consent judgment entered in a prior Proposition 65 suit after approval by the Attorney General.  *Id.* at 516-17, 525-27.  That warning, however, did not mention arsenic.

The court rejected the plaintiff's claims on two grounds.  First, it held that they were *res judicata* on the basis of the prior consent judgment.  Like the Consent Judgment in this case, that judgment "constitute[d] a full, final, and binding resolution of any violation of Proposition 65 that ha[d] been or could have been asserted in the public interest ... arising out of exposure" to the "listed chemicals" in the "Covered Products."  *Id.*  Because the *Charles* plaintiffs' claims were all "based on ... exposure to a listed chemical in a Covered Product," they were "barred by the consent judgment."  *Id.*  Second, the court held that the plaintiff's claims were all barred by the safe harbor doctrine: because state regulators had approved the defendants' existing label, which did not include a warning about arsenic, "any alleged deficiency" was "a matter for consideration by [those regulators] and the Legislature, rather than the court."  *Id.* at 525, 528.  The same is true here, in both respects.

---

[30] While the California Supreme Court's order depublishing *Charles* means that it is no longer precedential, it "is not an expression of th[at] court's opinion of the correctness of the result ... or of any law stated in the opinion."  Cal. Rules of Court 8.1125(d); *State Farm Mut. Auto. Ins. Co. v. Davis*, 937 F.2d 1415, 1420 n.4 (9th Cir. 1991).  Federal courts "may consider such depublished California decisions when construing California law, even though [they] have no precedential value." *Bao Yi Yang v. Shanghai Gourmet, LLC*, 471 F. App'x 784, 788 (9th Cir. 2012).

## IV.   THE COMPLAINT SHOULD BE DISMISSED UNDER THE PRIMARY JURISDICTION DOCTRINE

The "primary jurisdiction" doctrine permits courts to dismiss or stay cases that "contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993).  In determining whether the doctrine applies, courts ask whether "there is (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction [of an] administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086-87 (9th Cir. 2006) (cleaned up). This is the textbook example of a case where dismissal on primary jurisdiction grounds is called for.  Indeed, at least three courts recently have dismissed claims involving alleged lead and cadmium contamination in foods for this reason.  *See, e.g.*, *Gerber*, 2022 WL 10197651, at *11; *In re Beech-Nut Baby Food Litig.*, 2023 WL 350818, at *4 (N.D.N.Y. Jan. 19, 2023); *Kimca v. Sprout Foods, Inc.*, 2022 WL 3586095, at *2-4 (N.J. Super. Law Div. Aug. 5, 2022).

First, the appropriateness of Hershey's product labeling has been "placed by Congress within the jurisdiction of" FDA's "comprehensive regulatory scheme." *Davel*, 460 F.3d at 1086-87.  "Congress has regulated food and beverage labeling for more than 100 years," and "[t]he issue of proper declaration of ingredients on food labels is one as to which Congress vested the FDA with comprehensive regulatory authority." *Reese v. Odwalla, Inc.*, 30 F. Supp. 3d 935, 941 (N.D. Cal. 2014).

Second, resolution of this case requires FDA's special "expertise." *Davel*, 460 F.3d at 1087; *see Swearingen v. Yucatan Foods, L.P.*, 59 F. Supp. 3d 961, 964 (N.D. Cal. 2014) (explaining that courts frequently invoke primary jurisdiction when plaintiffs assert that a food contains an unsafe ingredient, as such allegations raise

20

"a host of technical issues uniquely within the [FDA's] expertise"). In particular, "resolving [Plaintiff's] claims first requires a determination on whether the levels of heavy metals in [Hershey's] products [are] harmful, which is within the FDA's field of expertise." *Beech-Nut*, 2023 WL 350818, at *4; *see also Gerber*, 2022 WL 10197651, at *13 ("Determining whether Defendants' products were at risk of containing *harmful* levels of Heavy Metals is a technical and policy consideration within the FDA's field of expertise."); *Kimca*, 2022 WL 3586095, at *3 (same).

Third, there is a strong need for "uniformity in administration," and a serious threat of inconsistent rulings if the many suits triggered by the *Consumer Reports* article are allowed to proceed. *See Gerber*, 2022 WL 10197651, at *14 ("Any decision by [this] Court regarding what level of [heavy metals] is harmful enough to require a warning label ... will likely result in a patchwork of decisions that vary by location, court, manufacturer, and product[.]"); *Beech-Nut*, 2023 WL 350818, at *4.

Finally, this very issue is currently before FDA for consideration. *See Gerber*, 2022 WL 10197651, at *14; *Kimca*, 2022 WL 3586095, at *4; *In re Kind LLC*, 209 F. Supp. 3d 689, 696 (S.D.N.Y. 2016) (primary jurisdiction applied where "FDA ha[d] initiated proceedings" in relevant area). As detailed above, FDA is in the midst of reexamining the science concerning lead and cadmium, and determining heavy metals limits for foods. "[I]t would be imprudent for the Court, at this juncture, to substitute its judgment for that of [FDA] while [regulatory] revision ... is pending." *Taradejna v. Gen. Mills, Inc.*, 909 F. Supp. 2d 1128, 1135 (D. Minn. 2012).

## V.   PLAINTIFF FAILS TO STATE ANY VALID CAUSE OF ACTION

### A.   Plaintiff's UCL, FAL and CLRA Claims Fail

#### 1.   Plaintiff's CLRA Claim Fails for Lack of Pre-Suit Notice

A "consumer must give notice at least thirty days before commencing an action for damages under the CLRA." *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp.

2d 939, 949 (S.D. Cal. 2007).  Plaintiff does not allege that she provided such pre-suit notice to Hershey—and, indeed, she did not do so.  Her CLRA claim must be "dismiss[ed] with prejudice" for that reason alone.  *Id.*

### 2.    The UCL and FAL Claims Fail Due to Adequate Remedies at Law

The UCL and FAL authorize only equitable, *i.e.*, restitutionary and injunctive, relief.  As such, those statutes may be invoked only when a plaintiff plausibly alleges "that she lacks an adequate remedy at law."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Rivera v. Jeld-Wen, Inc.*, 2022 WL 3702934, at *12-13 (S.D. Cal. Feb. 4, 2022) (Battaglia, J.).  Here, the Complaint asserts that "Plaintiff *may* lack an adequate remedy at law," Compl. ¶ 79 (emphasis added), but that "contingent" and conclusory allegation is inadequate.  *Shay v. Apple Inc.*, 2021 WL 1733385, at *5 (S.D. Cal. May 3, 2021).  Indeed, Plaintiff "seeks the same sum in equitable restitution ... as she request[s] in damages" under her CLRA and warranty claims: "a full refund of the purchase price."  That alone shows that her legal remedies are adequate.  *Sonner*, 971 F.3d at 844.

The possibility that Plaintiff's legal claims might not succeed is irrelevant, as the adequacy inquiry focuses "on the relief that could possibly be afforded under a claim, [not the] possible hurdles the plaintiff might face in achieving that relief." *Clevenger v. Welch Foods Inc.*, 2022 WL 18228288, at *5-6 (C.D. Cal. Dec. 14, 2022); *see Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) (CLRA claim constituted an "adequate remedy at law," even though Plaintiff "could no longer pursue it").  Plaintiffs' conclusory assertion that her equitable claims may "be more certain, prompt, and efficient than [the] legal remedies requested," Compl. ¶ 81, also is insufficient.  *See Zeller v. Optavia, LLC*, 2022 WL 17858032, at *7 (S.D. Cal. Dec. 22, 2022) ("Plaintiffs' arguments that equitable claims ... are easier to prove does not make their [legal claims inadequate].");  *Clevenger*, 2022 WL

18228288, at *5-6 (rejecting argument that legal remedies were inadequate because UCL claim was supposedly "more certain, prompt or efficient").

### 3. Plaintiff's Consumer Protection Claims Fail on the Merits

To state a consumer protection claim based on a pure failure to disclose, as opposed to an affirmative misrepresentation, a plaintiff must plead that the defendant was under a duty to disclose the information at issue. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141-43 (9th Cir. 2012). It is not enough to allege that the information in question is material, *i.e.*, that it would have impacted a reasonable plaintiff's purchase decision. *See id.* A duty to disclose exists only where the information concerns "an unreasonable safety hazard," *id.* at 1143, or renders the product wholly unable to perform its "central function," *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864-65 (9th Cir. 2018). For the reasons discussed above, neither of these conditions is plausibly pleaded here.

Independently, Plaintiff's claims flunk these statutes' "reasonable consumer" test. To state a claim under the CLRA, FAL and fraudulent prong of the UCL, a complaint must plausibly allege "that the defendant's purported misrepresentations are *likely* to deceive a *reasonable* consumer." *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1137 (S.D. Cal. 2021) (emphasis added). "This is not a negligible burden. To meet this standard, Plaintiffs must demonstrate 'more than a mere possibility that [the seller's] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021).

As noted above, FDA has repeatedly recognized that environmental contaminants like lead and cadmium "are unavoidable in the general food supply"; that "it is not possible to prevent or remove [them] entirely from foods"; and that there are "limits to how low [heavy metals] levels [in foods] can be." *Supra* at 3; *see also In*

23

*re Plum Baby Food Litig.*, 2022 WL 16552786, at *8 (D.N.J. Oct. 31, 2022) (citing FDA statements that lead "cannot be completely avoided," even "through organic farming practices"). Thus, if *any* undisclosed lead or cadmium in a food product were misleading under the "reasonable consumer" standard, "consumers would have grounds to sue the manufacturer of nearly every product in a typical grocery store"—a "preposterous" result. *Weaver v. Champion Petfoods USA Inc.*, 2019 WL 2774139, at *2-3 (E.D. Wis. July 1, 2019).

Given the omnipresence of lead and cadmium in the environment, reasonable consumers would not assume, based on a chocolate manufacturer's silence alone, that its products are absolutely free of lead or cadmium—even at trace levels which FDA and California's Attorney General have recognized as safe. *See Hawyuan Yu v. Dr Pepper Snapple Grp., Inc.*, 2020 WL 5910071, at *5 (N.D. Cal. Oct. 6, 2020) ("[I]t [is] implausible that a reasonable consumer would believe that a product … could not contain a trace amount of [a contaminant] that is far below the amount deemed tolerable by the FDA.").[31]  Thus, as a matter of law, reasonable consumers are not likely to be deceived by the facts alleged here.

Plaintiff's allegations under the "unlawful" and "unfair" prongs of the UCL fare no better. "Plaintiffs can succeed on [the unlawful] prong only if they plead sufficient facts to support another cause of action." *Stewart*, 537 F. Supp. 3d at 1153. Because Plaintiff fails to plead any other viable cause of action, she cannot state a

---

[31] *See also Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020) ("[A] reasonable consumer … would not make assumptions regarding the presence or absence of trace amounts" of an inadvertent contaminant); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019) ("[A] reasonable consumer would not be so absolutist as to [assume that] there is no glyphosate, even an accidental and innocuous amount, in the Products."); *In re Gen. Mills Glyphosate Litig.*, 2017 WL 2983877, at *6 (D. Minn. July 12, 2017) (noting that, even in a product labeled "100% Natural," a reasonable consumer would not assume "that there is no trace [of pesticide residue]," and that "[i]t would be nearly impossible to produce a processed food with no trace of any synthetic molecule").

claim under the UCL's unlawful prong.  Likewise, Plaintiff's claim under the UCL's unfair prong must be dismissed because, as a matter of law, Hershey's "failure to disclose information it had no duty to disclose in the first place is not substantially injurious, immoral, or unethical."  *Hodsdon*, 891 F.3d at 867.

### B.   Plaintiff Fails to State a Claim for Breach of Implied Warranty

The implied warranty of merchantability does "not impose a general require-ment that goods precisely fulfill the expectation of the buyer.  Instead, it provides for a *minimum* level of quality."  *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009).  A breach of this warranty thus occurs only "if the product lacks 'even the most basic degree of fitness for ordinary use.'"  *Pershing Pac. W., LLC v. Ferretti Grp., USA, Inc.*, 2013 WL 275676, at *7 (S.D. Cal. Jan. 24, 2013) (citation omitted).  For the reasons above, Plaintiff cannot plausibly allege that the chocolate bars she purchased were unfit for consumption.  Indeed, Plaintiff presumably consumed them and enjoyed them, since she alleges that she purchased them "regularly" and "often," Compl. ¶ 36—and as far as the Complaint discloses, she suffered no harm from doing so.

### C.   Plaintiff Fails to State a Claim for Unjust Enrichment

Because Plaintiff's unjust enrichment claim is "derivative of th[e] same facts" underlying her other deficient claims, it fails for the same reason those other claims fail.  *Aellis O. v. Connor*, 2022 WL 2229421, at *8 (S.D. Cal. June 21, 2022).  This equitable claim also must be dismissed because Plaintiff fails to plead—and cannot plausibly plead—that she lacks an adequate remedy at law.  *See Zeller v. Optavia, LLC*, 2022 WL 17858032, at *6-7 (S.D. Cal. Dec. 22, 2022); *supra* at 22-23.

### CONCLUSION

For the reasons set forth above, the Complaint should be dismissed in its en-tirety, with prejudice.

25

Dated:  March 10, 2023

Respectfully submitted,

*/s/ Robert K Dixon*

Robert Kenneth Dixon (SBN 262252)
rdixon@sandersroberts.com
SANDERS ROBERTS LLP
101 West Broadway, Suite 1105
San Diego, CA 92101
(619) 398-4800 ext. 1

Steven A. Zalesin (*pro hac vice* forthcoming)
sazalesin@pbwt.com
Jonah M. Knobler (*pro hac vice* forthcoming)
jknobler@pbwt.com
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Telephone (212) 336-2110

*Attorneys for Defendant The Hershey Company*

26

PROOF OF SERVICE

[FRCP 5(B)]

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

I am employed in the County of San Diego, State of California. I am over the age of 18 years and am not a party to the within action; my business address is 101 West Broadway, Suite 1105, San Diego, CA 92101. My electronic service address is cjohnson@sandersroberts.com.

On March 10, 2023, I served the following document(s) described as **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action as follows:

**FITZGERALD JOSEPH LLP**     **Attorneys for Plaintiff,**
JACK FITZGERALD, ESQ.       EVA GRAUSZ
jack@fitzgeraldjoseph.com
PAUL K. JOSEPH, ESQ.
paul@fitzgeraldjoseph.com
MELANIE PERSINGER, ESQ.
melanie@fitzgeraldjoseph.com
TREVOR M. FLYNN, ESQ.
trevor@fitzgeraldjoseph.com
CAROLINE S. EMHARDT, ESQ.
caroline@fitzgeraldjoseph.com
2341 Jefferson Street, Suite 200
San Diego, CA 92110

☒ By Electronic Mail: I caused the documents to be transmitted by electronic mail to the party(s) identified on the attached service list using the e-mail address(es) shown. I did not receive, within a reasonable time after transmission, any electronic message or other indication that the transmission(s) were unsuccessful.

I declare that I am employed in the office of a member of the bar of the court at whose direction the service was made.

Executed on March 10, 2023, at San Diego, California

*/s/Christina Johnson*
Christina Johnson

27