UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVA GRAUSZ, on behalf of herself, all others similarly situated, and the general public,<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>THE HERSHEY COMPANY,<br><br>　　　　　　　　　　　　　Defendant. | Case No.: 23-cv-00028-AJB-SBC<br><br>**ORDER GRANTING IN PART AND DENIES IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**(Doc. No. 35)** |

　　　Presently pending before the Court is Defendant the Hershey Company's motion to dismiss Plaintiff Eva Grausz's Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 35.) Plaintiff filed an opposition to the motion to dismiss, (Doc. No. 37), to which Hershey replied, (Doc. No. 38). Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter suitable for determination on the papers and without oral argument. For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Hershey's motion to dismiss Plaintiff's SAC.

///

///

1

## I. BACKGROUND

Defendant Hershey manufactures and sells various dark chocolate products under the Hershey's and Lily's brand names. (SAC, Doc. No. 34, ¶ 1.) In this putative class action, Plaintiff alleges recent independent lab testing found that several of Hershey's and Lily's chocolate products contain lead and cadmium, including Hershey's Special Dark Mildly Sweet Chocolate, Lily's Extremely Dark Chocolate 85% Cocoa, Lily's Extra Dark Chocolate 70% Cocoa, Lily's Original Dark Chocolate Stevia Sweetened 55% Cocoa Non GMO, and Lily's Sea Salt Extra Dark Chocolate 70% - Stevia Sweetened (the "Products"), and that those metals are unsafe at any level. (*Id.* ¶¶ 3–4.) Plaintiff further alleges Hershey has been on notice that its Products contain high levels of heavy metals since 2014, but that Hershey has failed to effectively reduce or remove heavy metals from the Products. (*Id.* ¶ 16.) Plaintiff's allegations are based on a December 2022 article from Consumer Reports and a March 2023 article by As You Sow ("AYS"). (*Id.* ¶¶ 13–15.)

Plaintiff states she "regularly purchased Lily's Extremely Dark Chocolate 85% Cocoa[,]" "often making her purchase" in San Diego, California. (*Id.* ¶ 58.) Plaintiff contends Hershey's advertising did not feature warnings that the Products contained toxic amounts of heavy metals. (*Id.* ¶¶ 55–57.) Rather, Hershey "touts its safety standards and how it vets its ingredient sources, and highlights the public trust that it has garnered as a result . . . ." (*Id.* ¶ 41.)

Plaintiff asserts she and the purported class were exposed to, saw, read, and understood the labels of the products, which omitted the presence of heavy metals, and that they relied upon the omission of warnings about the potential dangers of the Products containing heavy metals when making the decision to purchase the Products. (*Id.* ¶ 48.) Had she known the Products contained heavy metals, Plaintiff claims she and the purported class would not have purchased the Products or would have paid less for them. (*Id.* ¶ 50.) While she wishes to purchase the Products in the future, she "may not be able to reasonably determine whether the lead or cadmium in the Products has been addressed" without an

1  injunction because she cannot rely on the false representations in Hershey's current
2  advertising and marketing scheme. (*Id.* ¶ 66.)
3     Based on the foregoing, Plaintiff initiated this action on behalf of herself and as a
4  representative of all those similarly situated for: (1) Violation of California's Unfair
5  Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (Count I); Violation of
6  California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*
7  (Count II); Violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Bus.
8  & Prof. Code § 1750 *et seq.* (Count III); Breach of Implied Warranty of Merchantability,
9  Cal. Commercial Code § 2314 (Count IV); and Unjust Enrichment (Count V). (*See*
10 *generally* SAC.)
11    In 2015, AYS sent California's Proposition 65 notices to various chocolate
12 manufacturers, including Hershey, asserting their products contained lead and cadmium at
13 levels exceeding California's MADLs. (Doc. No. 35 at 12.) In February 2018, the
14 California Superior Court entered a consent judgment among AYS, Hershey, and others
15 (the "Consent Judgment"), after finding the proposed judgment "me[t] the requirements of
16 [California law] and [was] in the public interest," and the Consent Judgment was thereafter
17 endorsed by California's Attorney General. (*Id.* (quoting Consent Judgment, Case No.
18 CGC-15-548791 (Cal. Super. Ct. San Francisco Cnty. Feb. 15, 2018) at 2–20).) The
19 Consent Judgment raised the MADL thresholds to Hershey's products and specified that
20 compliance with the new limits would constitute compliance with Proposition 65 regarding
21 lead and/or cadmium in chocolate. (*Id.*) The Consent Judgment operated as a "full, final,
22 and binding resolution" of AYS's claims on behalf of itself and of the general public. (*Id.*
23 at 13 (internal citation omitted).)

## II. LEGAL STANDARD

25    A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the
26 pleadings' legal sufficiency and allows a court to dismiss a complaint if the court finds the
27 plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*,
28 250 F.3d 729, 732 (9th Cir. 2001). As a matter of law, the court may dismiss the complaint

for either a lack of a cognizable legal theory, or insufficient facts under a cognizable legal claim. *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding such deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, it is improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the complaint's contents and accepts all factual allegations as true, while drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## III.   REQUEST FOR JUDICIAL NOTICE

While the review scope on a motion to dismiss for failure to state a claim is limited to the complaint, a court may consider evidence on which the complaint necessarily relies if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff[']s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotation marks and citations omitted). Furthermore, Federal Rule of Evidence 201 permits judicial notice of a fact when it is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Welk v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1041-42 (S.D. Cal. 2015).

Here, Hershey requests the Court to take judicial notice of twelve exhibits in support of its Motion to Dismiss. (Doc. No. 35-1.)

///

1    First, Hershey requests judicial notice of the Consent Judgment, Case No. CGC-15-548791 (Cal. Super. Ct. San Francisco Cnty. Feb. 15, 2018). (*Id.* at 2.) The Court may take judicial notice of court filings. *See Rowland v. Paris Las Vegas*, No. 3:13-CV-02630-GPC-DHB, 2014 WL 769.93, at *2 (S.D. Cal. Feb. 25, 2014). However, "[w]hile the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents . . . are not." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004). Therefore, the Court **GRANTS** Hershey's request for judicial notice of the state court Consent Judgment.

Next, Hershey requests judicial notice of a California Office of Environmental Health Hazard Assessment ("OEHHA") report entitled *Proposition 65 Maximum Allowable Daily Level (MADL) for Reproductive Toxicity for Cadmium*, published in May 2001; a publicly available letter the Supervising Deputy Attorney General, Harrison M. Pollak, wrote to Danielle Fugere of the "As You Sow" organization on December 4, 2019; several FDA-written articles and one public FDA meeting transcript; a publicly available letter the Deputy Attorney General, Susan S. Fiering, wrote to Jake Shulte, Esq., of "Nicholas and Tomacevic LLP," and Noam Glick. Esq. of "Glick Law Group," on February 1, 2021; and a U.S. Department of Health & Human Services report entitled *Toxicological Profile for Cadmium*, dated September 2012. (Doc. No. 35-1 at 2–3.) However, the Court does not rely on these documents in reaching its conclusion below. Accordingly, the Court **DENIES AS MOOT** Hershey's requests for judicial notice as to these exhibits.

**IV.   DISCUSSION**

In its motion to dismiss, Hershey asserts that each of Plaintiff's claims fail to state a claim under Rule 12(b)(6). (Doc. No. 35.)

///
///
///

5

23-cv-00028-AJB-SBC

### A. UCL, FAL, and CLRA

Plaintiff asserts claims for violations of the UCL, the FAL, and the CLRA based on Hershey's alleged fraudulent and unlawful omissions, and violations of the UCL based on unfair conduct. (SAC ¶¶ 83–96.)

> The UCL [proscribes] business practices that are 'unlawful, unfair or fraudulent,' Cal. Bus. & Prof. Code § 17200[;] the FAL prohibits the dissemination of any advertising 'which is untrue or misleading,' Cal. Bus. & Prof. Code § 17500[;] and the CLRA declares specific acts and practices in the sale of goods or services to be unlawful, including making affirmative misrepresentations or omissions regarding the 'standard, quality, or grade' of a particular good or service, Cal. Civ. Code § 1770(a).

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014). To state a fraudulent omission or misrepresentation claim under the CLRA, FAL, or UCL, a plaintiff must plead (1) misrepresentation or omission, (2) reliance, and (3) damages. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1081 (N.D. Cal. 2022) (citing *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011)).

Plaintiff's CLRA, FAL, and UCL claims are largely based on overlapping theories of liability. First, Plaintiff pleads fraudulent and unlawful omission theories—Hershey's failure to disclose the presence of lead and cadmium in its Products induced consumers to purchase the chocolate bars when they otherwise would not have, and that Hershey's unlawful omissions violate the FAL; the CLRA; the Song-Beverly Act, Cal. Civ. Code § 1790, *et seq.*; the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*; and the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 110100, *et seq.* (SAC ¶¶ 84, 85.) Plaintiff also pleads that Hershey's conduct, including during the harvesting, post-harvesting, processing, storing, and ultimate sale of the Products, is unfair because it unnecessarily introduced additional amounts of lead and cadmium into the Products. (*Id.* ¶ 88.) Moreover, Plaintiff alleges Hershey's conduct with respect to labeling, advertising, and the sale of the Products was unfair because "it violates public policy as declared by specific constitutional, statutory, or regulatory provisions[.]"

(*Id.* ¶ 89.) Because the omissions theories of liability for the CLRA, FAL, and UCL claims overlap, the Court considers them in tandem. *See Gutierrez v. Johnson & Johnson Consumer, Inc.*, No. 19-CV-1345-DMS-AGS, 2020 WL 6106813, at *5 (S.D. Cal. Apr. 27, 2020) ("Consumer protection claims under the CLRA, FAL and UCL are often analyzed together because they share similar attributes.").

### 1. Fraudulent and Unlawful Omissions Theories

Hershey first argues Plaintiff's omission claims again fail because it did not have any duty to disclose and because the trace metals do not pose an unreasonable safety risk. (Doc. No. 35 at 19.) Plaintiff responds Hershey had a duty to disclose because the omitted information concerned an unreasonable safety hazard, and because FDA regulations require Hershey to disclose the presence of lead and cadmium. (Doc. No. 37 at 7.)

To plausibly allege a fraudulent omission, the omission must either (1) "be contrary to a representation actually made by the defendant," or (2) "*an omission of a fact the defendant was obliged to disclose.*" *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)).

#### a. Unreasonable Safety Hazard

The Court must first determine whether Hershey had a duty to disclose the presence of lead and cadmium in the Products. "[A] defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors." *Hammerling*, 615 F. Supp. 3d at 1085 (quoting *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1101–02 (N.D. Cal. 2021)). "The *LiMandri* factors are (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." *Id.* at 1085 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).

///

  Here, Plaintiff asserts Hershey's failure to disclose the presence of lead and cadmium in its Products, even at low levels, creates an unreasonable safety hazard. (Doc. No. 37 at 8–9.) "Where a plaintiff alleges a sufficiently close nexus between the claimed defect and the alleged safety issue, the injury risk need not have come to fruition." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017). However, the alleged "unreasonable safety hazard must describe more than merely 'conjectural and hypothetical' injuries." *Id.* at 1028 (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009)).

  Plaintiff first argues the "SAC no longer relies on the MADLs to allege that the lead and cadmium content of the Products creases [sic] an unreasonable safety risk, instead detailing specific harms at specific levels." (Doc. No. 37 at 8.) Rather, she asserts, she has pled a "sufficiently close nexus between the claimed defect (unsafe amounts of lead and cadmium) and the alleged safety issue (deleterious health effects of consuming lead and cadmium in the amounts found in the Products)." (*Id.*) Hershey counters that although Plaintiff has removed all mention of the MADLs, this "does not mean that her Complaint no longer relies on those thresholds." (Doc. No. 38 at 6.) Specifically, Plaintiff relies upon the December 2022 *Consumer Reports* article for the amounts of lead and cadmium in the Products, and the article, in turn, used the MADLs to determine which products contained purportedly excessive levels of lead or cadmium. (*Id.*) Hershey further argues Plaintiff cannot allege that the levels of lead or cadmium in the Products creates an unreasonable safety hazard because those levels are well below the Consent Judgment thresholds. (*Id.* at 19.) Plaintiff responds that Proposition 65 and the MADLs (even as modified by the Consent Judgment) "concern only at what levels those substances might result in *reproductive harm or some forms of cancer*." (Doc. No. 37 at 11.) Plaintiff further states that "while the levels established by the Consent Judgment may be probative as to whether the amounts in the Products present health risks for cancer or reproductive harm, they are irrelevant for all of the other risks of harm alleged in the SAC." (*Id.* at 12.) The Court agrees. As held previously by the Court, Plaintiff's claims are independent of Proposition 65 and the Consent Judgment, and these factual challenges are not typically adjudicated at

this stage of litigation. *See Barnes v. Nat. Organics, Inc.*, No. EDCV 22-314 JGB (PLAx), 2022 WL 4283779, at *6 (C.D. Cal. Sept. 13, 2022).

With respect to allegations of an unreasonable safety hazard, Plaintiff asserts "[n]o amount of lead is known to be safe" and may lead "to severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death." (SAC ¶ 21 (internal quotation marks omitted).) Similarly, the SAC pleads cadmium "likewise, poses a serious safety risk to consumers because it can cause cancer and is a known teratogen, an agent which causes malformation of an embryo." (*Id.* ¶ 30.) Ultimately, Plaintiff contends the Products pose an unreasonable safety hazard based on the serious health repercussions associated with the heavy metals contained therein. Hershey argues Plaintiff fails to plead "whether the trace amounts *at issue here* are actually enough to cause the health effects that Plaintiff . . . reiterates in the SAC." (Doc. No. 38 at 7.) The Court agrees. Plaintiff does not plead the amounts of the substances in Hershey's Products have created an *unreasonable* safety hazard. Plaintiff merely asserts that lead and cadmium are carcinogens, that "[t]here may be no safe level of exposure to a carcinogen," and that Hershey's products contain some amount of these substances. (SAC ¶ 32.)

Plaintiff newly alleges that the Center for Disease Control Agency for Toxic Substances and Disease Registry has established minimal risk levels for various toxins, including cadmium, "and has determined that cadmium may only be ingested 'without risk of adverse health effects' to the kidneys if the amount consumed is 'less than 0.0002 mg,' or 0.2µg per kg per day." (Doc. No. 37 at 8–9 (quoting SAC ¶ 31).) However, Plaintiff fails to provide a pin cite to this claim, and the report by the U.S. Department of Health and Human Services to which Plaintiff cites is nearly 500 pages. As the courts have often admonished litigants, "[j]udges are not like pigs, hunting for truffles buried in briefs." *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam)) (alternation in original). It is not the task of the court "to scour the record in search of a . . . fact," *Keenan v. Allan*, 91 F.3d 1275,

1279 (9th Cir. 1996) (internal quotation marks and citation omitted), nor to "excavate masses of papers in search of revealing tidbits—not only because the rules of procedure place the burden on the litigants, but also because [its] time is scarce." *Nw. Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662–63 (7th Cir. 1994). "It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). For these reasons, the Court will not entertain or undertake an examination of the merits here.

Thus, the Court **GRANTS** Hershey's motion to dismiss as to Plaintiff's claims on this basis under the UCL (under the fraudulent and unlawful omissions prongs), CLRA, and FAL **WITH LEAVE TO AMEND**.

### b. Misbranding

Plaintiff next asserts that food regulations require Hershey to list lead and cadmium in the ingredient list of the Products. (Doc. No. 37 at 13 (citing 21 U.S.C. § 343).) Hershey argues it is not required to list lead or cadmium as separate ingredients in the ingredient list because those metals were already present in the cocoa beans when Hershey "incorporated [those beans] into" the Products. (Doc. No. 35 at 29 (citing 21 C.F.R. § 101.100(a)(3)(i)).)

The FDA has issued a regulation exempting manufacturers from the obligation to disclose "[i]ncidental additives that are present in a food at insignificant levels and do not have any technical or functional effect in that food." 21 C.F.R. § 101.100(a)(3). "Incidental additives" include "[s]ubstances migrating to food from equipment or packaging or otherwise affecting food" so long as they are "not food additives," or, if they are food additives, "are used in conformity with regulations established pursuant to section 409 of the act." 21 C.F.R. § 101.100(a)(3)(iii). According to Plaintiff's own allegations, lead "seems to get into cacao after beans are harvested" and that lead contamination occurs "during **post-harvest processing**[.]" (SAC ¶ 17.) Accordingly, lead and cadmium in the Products are incidental additives. *See Stuve v. Kraft Heinz Co.*, No. 21-CV-1845, 2023 WL 184235, at *7 (N.D. Ill. Jan. 12, 2023).

Hershey contends that because its purported failure to include lead and cadmium in the Products' ingredient list was not "unlawful" under the FDCA or Sherman law, the UCL cannot provide an independent basis for liability. (Doc. No. 35 at 30.) Hershey further argues the "FDA has provided by regulation that '[s]ubstances that have no technical or functional effect' in a food, 'but are present in a food by reason of having been incorporated into the food as an ingredient of another food,' are 'exempt from compliance' with the statutory requirement on which Plaintiffs [sic] rely." (*Id.* at 29 (quoting 21 C.F.R. § 101.100(a)(3)(i)).) Plaintiff asserts that whether an additive is present at an "insignificant level" in the food depends on whether "consumers care about the amount of [the offending chemical] in [the product]," such that it is possible a substance is *not* present "at insignificant levels" even when it is present "in very small amounts." (Doc. No. 37 at 13 (quoting *Stuve*, 2023 WL 184235, at *7).) The Court agrees. "[W]hether these additives are present in insignificant levels is a question of fact, not suited for dismissal at a preliminary stage in the proceeding." *Holt v. Foodstate, Inc.*, No.: 15cv78 L (JMA), 2015 WL 9592534, at *4 (S.D. Cal. Dec. 31, 2015); *see, e.g.*, *Madrigal v. Hint, Inc.*, CV 17-02095-VAP (JCx), 2017 WL 6940534, at *2 (C.D. Cal. Dec. 14, 2017). Moreover, the Court find's Hershey's reliance on *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. C 09–1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010), unpersuasive. In *Herrington*, the Court did not analyze whether the additives at issue in allegedly misbranded cosmetics, which the plaintiff merely alleged "*may* be carcinogenic for humans," were present at insignificant levels. *See generally id.* As such, the Court **DENIES** Hershey's motion to dismiss on this basis.

### 2.     Unfair Conduct

Hershey next argues Plaintiff's UCL claim under the "unfair" prong also fails because Plaintiff fails to plead the challenged conduct "caus[ed] a *substantial* injury to consumers." (Doc. No. 35 at 25 (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026–27 (9th Cir. 2008)).) Hershey further asserts Plaintiff failed to plead the products she purchased failed to serve their function as chocolate bars. (*Id.* at 26.)

Additionally, Hershey argues the sale of the products with the lead and cadmium levels at issue here are "lawful" under the Consent Judgment, "and thus not unfair." (*Id.*) Plaintiff pleads that "Hershey's conduct, including during the harvesting, post-harvesting, processing, storing, and ultimate sale of the Products to consumers was unfair because it unnecessarily introduced additional amounts of lead and cadmium into the Products." (SAC ¶ 88.) Plaintiff further alleges Hershey's Products contain more lead and cadmium than other competing dark chocolate bars, (*id.* ¶ 19), and while being put on notice of these levels of heavy metals, Hershey "failed to take steps to effectively reduce or remove lead from the Products[,]" (*id.* ¶ 16). Plaintiff also alleges the consumer injury was substantial because "the increase in profits obtained by Hershey through the misleading labeling does not outweigh the harm to Class Members who were deceived into purchasing the Products . . . ." (*Id.* ¶ 90.) In reply, Hershey contends it is not involved in the "harvesting" or "post-harvesting" practices at the heart of this theory. (Doc. No. 38 at 11.) Thus, any unfair conduct occurring in the harvesting or post-harvesting context cannot be attributable to Hershey. (*Id.*) The Court agrees. Plaintiff's SAC states Hershey "manufactures and sells" the Products, (SAC ¶ 1), and "sources 100 percent of ingredients from suppliers[,]" (*id.* ¶ 41.) As such, Plaintiff's claim as to Hershey's involvement in the "harvesting" or "post-harvesting" practices fails.

"An 'unfair' business practice is actionable under the [UCL] even if it is not 'deceptive' or 'unlawful.'" *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 990 (2008) (citations omitted). An "unfair" business practice occurs "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Wilner v. Sunset Life Ins. Co.*, 78 Cal. App. 4th 952, 965 (2000) (internal quotation marks and citations omitted). "An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Daugherty*, 144 Cal. App. 4th at 839.

///

The Court notes the levels of lead and cadmium in the Products fits within the parameters described in the Consent Judgment, and thus Hershey's actions were lawful. *See Churchill Vill., L.L.C. v. Gen. Electric Co.*, 169 F. Supp. 2d 1119, 1131 (N.D. Cal. 2000). However, Plaintiff sufficiently pleads an actionable omission under the FDCA, and thus, Hershey's motion to dismissed on this basis is denied. *See Augustine v. Talking Rain Beverage Co., Inc.*, 386 F. Supp. 3d 1317, 1329–30 (S.D. Cal. 2019) (denying motion to dismiss the "unfair" UCL claim where the plaintiffs alleged the misleading labels on the products deceived plaintiffs into paying a premium price for the product).

### B. Equitable Remedies

Hershey again moves to dismiss Plaintiff's UCL, FAL, and unjust enrichment claims for Plaintiff's failure to allege a lack of adequate legal remedies which, under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), is a prerequisite to the pursuit of an equitable claim. (Doc. No. 35 at 23–24.) In the SAC, Plaintiff asserts her legal remedies are inadequate to fully compensate her for all of Hershey's alleged behavior. (SAC ¶¶ 95–96, 105.) Specifically, Plaintiff asserts that "even if the CLRA and commercial code provide adequate legal relief for Hershey's *false advertising*, those statutes do not cover the behavior alleged to form the basis of Plaintiff's *unfair behavior* claim under the UCL." (Doc. No. 37 at 21.)

Although "[e]quitable jurisdiction is distinct from subject matter jurisdiction . . . both are required for a federal court to hear the merits of an equitable claim." *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1314 (9th Cir. 2022); *Schlesinger v. Councilman*, 420 U.S. 738, 754 (1975). Unlike state courts, federal courts have equitable jurisdiction to award equitable relief only where a plaintiff has no adequate legal remedy based on the same harm. *See Sonner*, 971 F.3d at 842. Thus, where monetary damages provide an adequate remedy, a federal court may not consider the merits of equitable claims for restitution, disgorgement, or injunctive relief. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75–76 (1992); *see, e.g.*, *Feitelberg v. Credit Suisse First Bos., LLC*, 134 Cal. App. 4th 997, 1009 (2005) (noting restitution and injunctive relief are equitable in nature). Moreover,

certain claims—such as the UCL, the FAL, and unjust enrichment—only provide for equitable relief and thus, are impermissible where adequate money damages are available. *See Guzman*, 49 F.4th at 1313 ("[T]he UCL provides only for equitable remedies."); *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009) (same as to the FAL); *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942, at *7 (N.D. Cal. Sept. 8, 2016) (same as to unjust enrichment). Plaintiffs bear the burden to establish they lack an adequate damages remedy before they can obtain equitable relief. *See Sonner*, 971 F.3d at 844.

The Court finds Plaintiff has failed to establish she lacks an adequate remedy at law as to her claims for restitution. Plaintiff first asserts her claims under the "unfair" prong of the UCL "sweep more broadly" than her claims under the UCL, FAL, or CLRA's omissions theories, and thus her legal remedies are inadequate. (SAC ¶ 96.) Plaintiff further alleges that she "may lack an adequate remedy at law, if for instance, damages resulting from their purchase of the Products is determined to be in an amount less than the premium price of the Products." (*Id.* ¶¶ 103, 105.) However, Plaintiff's allegations do not show how restitution would go beyond the damages available to her. Plaintiff fails to allege any specific facts showing that damages are "inadequate or incomplete." *Sonner*, 971 F.3d at 844; *see also Nacarino v. Chobani*, LLC, No. 20-cv-07437-EMC, 2021 WL 3487117, at *12 (N.D. Cal. Aug. 9, 2021) (finding the plaintiff failed to allege any specific facts showing that damages were "inadequate or incomplete").

However, the Court finds Plaintiff may seek equitable relief in the form of an injunction under the UCL and FAL to the extent her claims are premised on alleged future harm. "Although *Sonner* only spoke about restitution for past harms, various district courts have since found that the decision applies to equitable claims for injunctive relief based on future harm as well." *Mier v. CVS Pharmacy, Inc.*, No. SA CV 20-01979-DOC-ADS, 2021 WL 1559367, at *13 (C.D. Cal. Mar. 22, 2021), *abrogated on other grounds by* No. 8:20-cv-01979-DOC-ADS, 2023 WL 6985706 (C.D. Cal. Oct. 20, 2023). Here, Plaintiff has sufficiently pled the likelihood of future harm for which she has no adequate remedy at

law, and is not barred from seeking injunctive relief for the same. *See Souter v. Edgewell Personal Care Co.*, No.: 20-CV-1486 TWR (BLM), 2022 WL 485000, at *13 (S.D. Cal. Feb. 16, 2022).

Based on the foregoing, the Court **GRANTS** Hershey's motion to dismiss Plaintiff's claims—to the extent they are based upon Hershey's alleged omission—for equitable relief in the form of restitution, and **DENIES** the motion as to Plaintiff's claims for injunctive relief.

### C.      The Implied Warranty of Merchantability

Hershey next argues Plaintiff's SAC fails to state a claim for breach of implied warranty because she cannot plausibly allege the Products she purchased were unfit for consumption. (Doc. No. 35 at 24.) Plaintiff counters she has added allegations that "many brands of dark chocolate bars test at levels far below that of the Hershey Products." (Doc. No. 37 at 20 (citing SAC ¶ 19).) In her SAC, Plaintiff further asserts that the Products "would not pass without objection in the trade or industry . . . ." (SAC ¶ 118.)

Under California law, "a warranty that the goods shall be merchantable is implied in a contract for their sale." Cal. Com. Code § 2314(1). California recognizes an exception to the privity requirement in breach of warranty claims pertaining to food or drug products. *Wendell v. Johnson & Johnson*, No. C 09–04124 CW, 2010 WL 271423, *5 (N.D. Cal. Jan. 20, 2010) (citing *Gottsdanker v. Cutter Labs.*, 182 Cal. App. 2d 602 (1960)).

Plaintiff contends she has stated a claim for breach of the implied warranty because in addition to a product being suitable for its intended use—to eat—the implied warranty provides that the product "pass without objection in the trade under the contract description[.]" (Doc. No. 37 at 21 (quoting *Arabian v. Organic Candy Factory*, No. 2:17–cv–05410–ODW–PLA, 2018 WL 1406608, at *8 (C.D. Cal. Mar. 19, 2018)).)

"In analyzing the 'passing without objection in the trade' requirement, '[c]rucial to the inquiry is whether the product conformed to the standard performance of like products used in the trade. This determination may depend on testimony of persons familiar with the industry standards and local practices and is a question of fact.'" *Arabian*, 2018 WL

1406608, at *8 (quoting *Pisano v. Am. Leasing*, 146 Cal. App. 3d 194, 198 (1983)). In the SAC, Plaintiff alleges the Products both (1) do not pass without objection in the trade under the contract description, and (2) are not fit for the ordinary purposes for which the Products are used. Regarding the second allegation, Plaintiff fails to plead sufficient facts that the chocolates she purchased were unfit for their "ordinary purpose" as food products, *Birdsong*, 590 F.3d at 958 n.2; *Liou v. Organifi, LLC*, 491 F. Supp. 3d 740, 749 (S.D. Cal. 2020), or were "unfit for consumption," *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1028, 1032 (N.D. Cal. 2016), or were "not merchantable or fit for use as" chocolates, *see Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 896 (C.D. Cal. 2013).

However, Plaintiff pleads that "*many* brands of dark chocolate bars test at levels far below that of the Hershey Products." (SAC ¶ 19.) Thus, on this basis, Plaintiff adequately alleges that Hershey's Products do not comply with the standards of quality, so as to pass without objection in the trade under the contract description.

## V.    CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** Hershey's motion to dismiss Plaintiff Eva Grausz's SAC. (Doc. No. 35.) No later than **Thursday, February 8, 2024**, Plaintiff may file a third amended complaint which cures the pleading deficiencies identified in this Order. Hershey must file a responsive pleading no later than **February 22, 2024**. Plaintiff is cautioned that if the third amended complaint fails to cure these deficiencies, the Court will dismiss the defective claims without further leave to amend.

**IT IS SO ORDERED**.

Dated: January 25, 2024

Hon. Anthony J. Battaglia
United States District Judge