UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVA GRAUSZ, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>THE HERSHEY COMPANY,<br><br>Defendant. | Case No.: 23-cv-00028-AJB-SBC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>**(Doc. No. 44)** |

Presently pending before the Court is Defendant the Hershey Company's motion to dismiss (Doc. No. 44) Plaintiff Eva Grausz's Third Amended Complaint ("TAC") (Doc. No. 43) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff filed an opposition to the motion to dismiss, (Doc. No. 46), to which Hershey replied, (Doc. No. 47). Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter suitable for determination on the papers and without oral argument. For the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** Hershey's motion to dismiss Plaintiff's TAC.

///

///

1

23-cv-00028-AJB-SBC

## I. BACKGROUND

Defendant Hershey manufactures and sells various dark chocolate products under the Hershey's and Lily's brand names. (TAC, Doc. No. 43, ¶ 1.) In this putative class action, Plaintiff alleges recent independent lab testing found that several of Hershey's and Lily's chocolate products contain lead and cadmium, including Hershey's Special Dark Mildly Sweet Chocolate, Lily's Extremely Dark Chocolate 85% Cocoa, Lily's Extra Dark Chocolate 70% Cocoa, Lily's Original Dark Chocolate Stevia Sweetened 55% Cocoa Non GMO, and Lily's Sea Salt Extra Dark Chocolate 70% - Stevia Sweetened (the "Products"), and that those metals are unsafe at any level. (*Id.* ¶¶ 3–4.) Plaintiff further alleges Hershey has been on notice that its Products contain high levels of heavy metals since 2014, but that Hershey has failed to effectively reduce or remove heavy metals from the Products. (*Id.* ¶ 16.) Plaintiff's allegations are based on a December 2022 article from Consumer Reports and a March 2023 article by As You Sow ("AYS"). (*Id.* ¶¶ 13–15.)

Plaintiff now asserts that the cadmium levels in Lily's Extremely Dark Chocolate present an "unreasonable risk of harm." (*Id.* at ¶ 32.) Plaintiff refers to Centers for Disease Control ("CDC") data which establishes Minimal Risk Levels for various toxins, which contends that those levels should be less than 0.0002 mg/kg/day. (*Id.* at ¶ 33.) If a 128-pound person, Plaintiff argues, eats a single Lily's Extremely Dark Chocolate bar, then that alone would exceed the CDC's recommended limit. (*Id.* at 34.) Plaintiff further contends that people who consume these chocolate bars regularly are exposed to an "unreasonable risk of harm" of renal disease. (*Id.* at 35.)

Plaintiff states she "regularly purchased Lily's Extremely Dark Chocolate 85% Cocoa[,]" "often making her purchase" in San Diego, California. (*Id.* ¶ 60.) Plaintiff contends Hershey's advertising did not feature warnings that the Products contained toxic amounts of heavy metals. (*Id.* ¶¶ 55–57.) Rather, Hershey "touts its safety standards and how it vets its ingredient sources, and highlights the public trust that it has garnered as a result . . . ." (*Id.* ¶ 41.)

    Plaintiff asserts she and the purported class were exposed to, saw, read, and understood the labels of the products, which omitted the presence of heavy metals, and that they relied upon the omission of warnings about the potential dangers of the Products containing heavy metals when making the decision to purchase the Products. (*Id.* ¶ 50.) Had she known the Products contained heavy metals, Plaintiff claims she and the purported class would not have purchased the Products or would have paid less for them. (*Id.* ¶ 52.) While she wishes to purchase the Products in the future, she "may not be able to reasonably determine whether the lead or cadmium in the Products has been addressed" without an injunction because she cannot rely on the false representations in Hershey's current advertising and marketing scheme. (*Id.* ¶ 68.)

    Based on the foregoing, Plaintiff initiated this action on behalf of herself and as a representative of all those similarly situated for: (1) Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (Count I); Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.* (Count II); Violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code § 1750 *et seq.* (Count III); Breach of Implied Warranty of Merchantability, Cal. Commercial Code § 2314 (Count IV); and Unjust Enrichment (Count V). (*See generally* TAC.)

    In 2015, AYS sent California's Proposition 65 notices to various chocolate manufacturers, including Hershey, asserting their products contained lead and cadmium at levels exceeding California's MADLs. (Doc. No. 44 at 6.) In February 2018, the California Superior Court entered a consent judgment among AYS, Hershey, and others (the "Consent Judgment"), after finding the proposed judgment "me[t] the requirements of [California law] and [was] in the public interest," and the Consent Judgment was thereafter endorsed by California's Attorney General. (*Id.* (quoting Consent Judgment, Case No. CGC-15-548791 (Cal. Super. Ct. San Francisco Cnty. Feb. 15, 2018) at 2–20).) The Consent Judgment raised the MADL thresholds to Hershey's products and specified that compliance with the new limits would constitute compliance with Proposition 65 regarding

lead and/or cadmium in chocolate. (*Id.*) The Consent Judgment operated as a "full, final, and binding resolution" of AYS's claims on behalf of itself and of the general public. (*Id.* at 13 (internal citation omitted).)

## II.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the pleadings' legal sufficiency and allows a court to dismiss a complaint if the court finds the plaintiff has failed to state a claim upon which relief may be granted. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). As a matter of law, the court may dismiss the complaint for either a lack of a cognizable legal theory, or insufficient facts under a cognizable legal claim. *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding such deference, the reviewing court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, it is improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The court only reviews the complaint's contents and accepts all factual allegations as true, while drawing all reasonable inferences in favor of the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

## III.   REQUEST FOR JUDICIAL NOTICE

While the review scope on a motion to dismiss for failure to state a claim is limited to the complaint, a court may consider evidence on which the complaint necessarily relies if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff['s] claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal

1  quotation marks and citations omitted). Furthermore, Federal Rule of Evidence 201 permits
2  judicial notice of a fact when it is "not subject to reasonable dispute because it: (1) is
3  generally known within the trial court's territorial jurisdiction; or (2) can be accurately and
4  readily determined from sources whose accuracy cannot reasonably be questioned." *Welk*
5  *v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1041-42 (S.D. Cal. 2015).

6  Here, Hershey requests the Court to take judicial notice of twenty-two exhibits in
7  support of its Motion to Dismiss, (Doc. No. 44-1), and four exhibits in support of its Reply
8  in Support of its Motion to Dismiss, (Doc. No. 47-1).

9  First, Hershey requests judicial notice of the Consent Judgment, Case No. CGC-15-
10 548791 (Cal. Super. Ct. San Francisco Cnty. Feb. 15, 2018). (*Id.* at 2.) The Court may take
11 judicial notice of court filings. *See Rowland v. Paris Las Vegas*, No. 3:13-CV-02630-GPC-
12 DHB, 2014 WL 769.93, at *2 (S.D. Cal. Feb. 25, 2014). However, "[w]hile the authenticity
13 and existence of a particular order, motion, pleading or judicial proceeding, which is a
14 matter of public record, is judicially noticeable, veracity and validity of its contents . . . are
15 not." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004).
16 Therefore, the Court **GRANTS** Hershey's request for judicial notice of the state court
17 Consent Judgment.

18 As to the remaining twenty-five requests, the Court does not rely on these documents
19 in reaching its decision below. Accordingly, the Court **DENIES AS MOOT** Hershey's
20 requests for judicial notice as to these exhibits.

21 **IV.   DISCUSSION**

22 In its motion to dismiss, Hershey again asserts that each of Plaintiff's claims fail to
23 state a claim under Rule 12(b)(6) and that the Court should dismiss them without leave to
24 amend. (Doc. No. 44.)

25 Plaintiff's TAC fails to add any pertinent facts, much less cure the numerous
26 deficiencies identified in the Court's previous orders. In "the Ninth Circuit . . . plaintiffs
27 do not enjoy unlimited opportunities to amend their complaints." *Stone v. Conrad Preby's*,
28 No. 12–CV–2031–IEG (BLM), 2013 WL 139939, at *2 (S.D. Cal. Jan.10, 2013) (citing

*McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir.1996)). "Where . . . an amended complaint simply 'restate[s] the prior [dismissed claims] without curing their deficiencies,' the Court properly dismisses with prejudice." *Roger v. Cnty. of San Diego, Cal.*, No. 12–CV–1684–IEG (MDD), 2013 WL 1629208, at *2 (S.D. Cal. April 15, 2013) (quoting *McHenry*, 84 F.3d at 1174).

### A.     UCL, FAL, and CLRA

California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The FAL prohibits any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17500). In California, a violation of the FAL "necessarily violates" the UCL. *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002). The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770.

This Court previously dismissed Plaintiff's UCL (under the fraudulent and unlawful omission prongs), FAL, and CLRA claims with leave to amend. (Doc. No. 41 at 17.) Plaintiff again asserts claims for violations of the UCL, the FAL, and the CLRA based on Hershey's alleged fraudulent and unlawful omissions. (TAC ¶¶ 81–115.) To state a fraudulent omission or misrepresentation claim under the UCL, FAL, or CLRA, a plaintiff must plead (1) misrepresentation or omission, (2) reliance, and (3) damages. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1081 (N.D. Cal. 2022) (citing *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011)).

In the TAC, Plaintiff again bases her UCL, FAL, and CLRA claims on overlapping theories of liability. First, Plaintiff pleads fraudulent and unlawful omission theories—Hershey's failure to disclose the presence of lead and cadmium in its Products induced consumers to purchase the chocolate bars when they otherwise would not have, and that Hershey's unlawful omissions violate the FAL; the CLRA; the Song-Beverly Act, Cal. Civ. Code § 1790, *et seq.*; the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, *et seq.*; and the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 110100, *et seq.* (TAC ¶ 87.) Plaintiff also pleads that Hershey's conduct,

including during the harvesting, post-harvesting, processing, storing, and ultimate sale of the Products, is unfair because it unnecessarily introduced additional amounts of lead and cadmium into the Products. (*Id.* ¶ 91.) Moreover, Plaintiff alleges Hershey's conduct with respect to labeling, advertising, and the sale of the Products was unfair because "it violates public policy as declared by specific constitutional, statutory, or regulatory provisions[.]" (*Id.* ¶ 92.) Because the omissions theories of liability for the CLRA, FAL, and UCL claims overlap, the Court considers them in tandem. *See Gutierrez v. Johnson & Johnson Consumer, Inc.*, No. 19-CV-1345-DMS-AGS, 2020 WL 6106813, at *5 (S.D. Cal. Apr. 27, 2020) ("Consumer protection claims under the CLRA, FAL and UCL are often analyzed together because they share similar attributes.").

### 1. Fraudulent and Unlawful Omissions Theories

In her TAC, Plaintiff often replaces her previously alleged "unreasonable safety hazard" with allegations that consuming the Products "increase[s] the risk of disease." (*See, e.g.*, TAC ¶ 12.) Hershey contends that Plaintiff's main liability theory is the failure to disclose "traces of lead and/or cadmium." (Doc. No. 44 at 18.) But this Court previously acknowledged that Hershey is under no statutory requirement to disclose the presence of such chemicals unless they "relate[] to an unreasonable safety hazard" or "is material [and] 'central to the product's function[.]'" (Doc. No. 41 at 7.)

To plausibly allege a fraudulent omission, the omission must either (1) "be contrary to a representation actually made by the defendant," or (2) "an omission of a fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)).

#### a. Unreasonable Safety Hazard

"[A] defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors." *Hammerling*, 615 F. Supp. 3d at 1085 (quoting *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1101–02 (N.D. Cal. 2021)). "The *LiMandri* factors are (1) the defendant is in a

fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." *Id.* at 1085 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).

Plaintiff argues the TAC now includes "substantive allegations curing th[e] deficiencies" from her previous complaints. (Doc. No. 46 at 7.) She claims to now add scientific evidence from the Center for Disease Control ("CDC") showing that Hershey's products contain cadmium at levels making it "an unreasonable safety risk." (*Id.*) She contends that this data reveals that Hershey had a duty to disclose this information to consumers, and that its omission should allow her UCL, FAL, and CLRA claims to proceed. (*Id.*) Plaintiff reiterates that the CDC Agency for Toxic Substances and Disease Registry has established minimal risk levels for various toxins, including cadmium, "and has determined that cadmium may only be ingested 'without risk of adverse health effects' to the kidneys if the amount consumed is 'less than 0.0002 mg/kg/day." (TAC ¶ 33.) Plaintiff now provides a pin cite to the report by the U.S. Department of Health and Human Services; however, this citation merely highlights the dangers of "chronic-duration" oral MRLs.

Hershey first argues Plaintiff still alleges no facts that its Products contain enough lead or cadmium to increase the risk of disease. (Doc. No. 44 at 19.) It asserts that many life activities theoretically increase the risk of disease, and that Plaintiff fails to allege that the presence of lead and cadmium pose an "*unreasonable* safety hazard." (*Id.*) "Where a plaintiff alleges a sufficiently close nexus between the claimed defect and the alleged safety issue, the injury risk need not have come to fruition." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017). However, the alleged "unreasonable safety hazard must describe more than merely 'conjectural and hypothetical' injuries." *Id.* at 1028 (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009)). In her TAC, Plaintiff still fails to plausibly allege an unreasonable safety hazard.

|   |   |
|---|---|
| 1 | Hershey then argues Plaintiff selectively quoted its Chief Financial Officer in a May |
| 2 | 2023 *Reuters* article, in which they state the company "would love to eradicate" lead and |
| 3 | cadmium from its Products. (*Id.* at 19.) Hershey argues Plaintiff "twists this quote into a |
| 4 | supposed admission that Hershey '*could* eradicate . . . heavy metals completely.'" (*Id.*) It |
| 5 | asserts that, regardless, the question is not whether such metals are present, but whether |
| 6 | the amounts allegedly present create an "unreasonable safety hazard." (*Id.*) Hershey also |
| 7 | criticizes Plaintiff's reliance on data suggesting that if a 128-pound person ate an entire bar |
| 8 | daily for an indefinite timeframe, she would exceed the cadmium threshold. (*Id.* at 20.) |
| 9 | With respect to allegations of an unreasonable safety hazard, Plaintiff asserts "no |
| 10 | lead exposure is safe for children" and, in adults, may lead "to severe health risks and |
| 11 | toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and |
| 12 | in extreme cases, coma and death." (TAC ¶¶ 27–28 (internal quotation marks omitted).) |
| 13 | Similarly, the TAC pleads cadmium "likewise, poses a serious safety risk to consumers |
| 14 | because it can cause cancer and is a known teratogen, an agent which causes malformation |
| 15 | of an embryo." (*Id.* ¶ 30.) Ultimately, Plaintiff contends the Products pose an unreasonable |
| 16 | safety hazard based on the serious health repercussions associated with the heavy metals |
| 17 | contained therein. Hershey argues Plaintiff fails to plead "whether the trace amounts *at* |
| 18 | *issue here* are actually enough to cause the health effects that Plaintiff . . . reiterates in the |
| 19 | SAC." (Doc. No. 44 at 18 (quoting Doc. No. 41. at 9).) The Court, once again, agrees. |
| 20 | Plaintiff does not plead the amounts of the substances in Hershey's Products have created |
| 21 | an *unreasonable* safety hazard. Plaintiff again merely asserts that lead and cadmium are |
| 22 | carcinogens, that "[t]here may be no safe level of exposure to a carcinogen," and that |
| 23 | Hershey's products contain some amount of these substances. (TAC ¶ 31.) |
| 24 | Thus, the Court **GRANTS** Hershey's motion to dismiss as to Plaintiff's claims on |
| 25 | this basis under the UCL (under the fraudulent and unlawful omissions prongs), CLRA, |
| 26 | and FAL **WITHOUT LEAVE TO AMEND**. |
| 27 | /// |
| 28 | /// |

### 2. Unfair Conduct

Hershey next argues Plaintiff's UCL claim under the "unfair" prong still fails because Plaintiff fails to plead the challenged conduct "caus[ed] a *substantial* injury to consumers[,]" and that Plaintiff "adds virtually no facts to salvage her claim[.]" (Doc. No. 44 at 22 (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026–27 (9th Cir. 2008)).) Hershey further asserts the Court has already found the Products adequately serve their function as chocolate bars. (*Id.* at 23.)

The Court agrees that Plaintiff has not added any pertinent facts to cure the deficiencies identified in the Court's previous orders. As the Court previously found, any unfair conduct occurring in the harvesting or post-harvesting context cannot be attributable to Hershey, and Plaintiff adds no new facts indicating Hershey is involved in the "harvesting" or "post-harvesting" practices. (*See* Doc. No. 41 at 12.)

However, as previously noted, Plaintiff sufficiently pleads an actionable omission under the FDCA, and thus, Hershey's motion to dismissed on this basis is denied. (*See id.* at 13.)

### B. Equitable Remedies

The Court previously held that Plaintiff failed to establish she lacks an adequate remedy at law as to her claims for restitution. (Doc. No. 41 at 13.) Plaintiff has not raised new allegations to disturb the Court's previous findings. (*See generally* TAC.) Thus, Court **GRANTS** Hershey's motion to dismiss Plaintiff's claims—to the extent they are based upon Hershey's alleged omission—for equitable relief in the form of restitution, and **DENIES** the motion as to Plaintiff's claims for injunctive relief.

### C. Previously Decided Claims

Hershey contends the Court erred in its two previous declinations to dismiss Plaintiff's misbranding and implied warranty claims and urges it to perform a *de novo* review of its own rulings. (Doc. No. 44 at 23–32.) It argues that because the TAC is now the operative pleading, the Court may correct any clearly erroneous errors that it has made. ///

(*Id.*) Hershey cites to *Askins v. U.S. Department of Homeland Security*, 899 F.3d 1035 (9th Cir. 2018), to illustrate that the court is not bound by previous pleadings before it. (*Id.*)

Hershey's reliance on *Askins* is misguided. In *Askins*, the Ninth Circuit reversed the district court's dismissal of a plaintiff's amended complaint under the law of the case doctrine. 899 F.3d at 1038. The plaintiffs filed suits against the United States for First Amendment violations, seeking injunctive and declaratory relief. *Id.* at 1038. The district court dismissed their complaint with leave to amend. *Id.* at 1038. However, the court also dismissed their amended complaint, holding that it was prohibited by the law of the case doctrine. *Id.* at 1038. The Ninth Circuit held the law of the case doctrine does not "preclude a court from reassessing its own legal rulings in the same case." *Id.* at 1042. It stated that the amended complaint entitles the plaintiff "to judgment on the [amended] complaint's own merits." *Id.* at 1038. *Aksins* applies to the present case only to the degree that the Court is reviewing Plaintiff's amended pleadings on its own merits.

Moreover, Hershey's request is better construed as a motion for reconsideration. "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Moreover, motions to reconsider are not a platform to relitigate arguments and facts previously considered and rejected. *See Harrison v. Sofamor/Danek Grp., Inc.*, Case No. 94-cv-0692-K, 1998 WL 1166044, at *3 (S.D. Cal. Sept. 15, 1998).

Because Hershey has not presented newly discovered evidence, shown the Court committed clear error, or raised an intervening change in the controlling law, the Court **DENIES** Hershey's motion to dismiss on this basis.

## V. CONCLUSION

For the reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** Hershey's motion to dismiss Plaintiff Eva Grausz's TAC **WITHOUT LEAVE TO AMEND**. (Doc. No. 44.)

**IT IS SO ORDERED**.

Dated: August 15, 2024

Hon. Anthony J. Battaglia
United States District Judge